(No. 72392.—■)

B. ALLEN KING, Appellee, v. GEORGE RYAN, Secretary of State, Appellant.

*Opinion filed December 4, 1992.*

MILLER, C.J., and HEIPLE, J., dissenting.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Daniel N. Malato, Assistant Attorney General, of Chicago, of counsel), for appellant.

Edward M. Maloney, of Ahern & Maloney, of Skokie, for appellee.

Edwin A. Rothschild, of Sonnenschein, Nath & Rosenthal, and Harvey Grossman, all of Chicago, for *amicus curiae* American Civil Liberties Union of Illinois.

John F. Donahue and Elaine Odeh, of Donahue, Sowa and Bugos, of Lisle, and Thomas A. Clancy, Dennis A. Rendleman and Mary T. McDermott, of Springfield, for *amicus curiae* Illinois State Bar Association.

JUSTICE CLARK delivered the opinion of the court:

At 10 p.m. on January 31, 1991, plaintiff, Bruce Allen King, was driving south on a two-lane highway in Grayslake, Illinois. King attempted to turn left into a gas station when he collided with a car driving north on the same road. The driver of the other car, Nickie Nichols, and two passengers from King's car were injured and required medical treatment.

Upon arriving at the scene of the accident, police officer Randall Hegland questioned King about the accident and noticed a strong odor of alcohol on King's breath. King stated that he did not see Nichol's car because there were no headlights working. Hegland checked the headlight switch in Nichol's car and found that it was in the "on" position. However, due to the accident, it was impossible to determine if Nichol's headlights were working. Hegland noticed that the area in which the accident occurred was well lit and concluded that even if the headlights were not working, King should have seen Nichol's car approaching. Based on this information, Hegland concluded that there was probable cause to believe that King was at least in part at fault for the accident.

At Hegland's request, King accompanied him to the Grayslake police station. At the station, King took and passed a field sobriety test. Hegland then requested that King submit to a breath test pursuant to section 11—501.6 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.6). Hegland read King the "Traffic Accident Warning to Motorists" and, according to Hegland, King stated he understood the warning. King refused to take the breath test. Hegland then prepared the necessary reports to notify the Secretary of State of King's refusal and issued copies of the reports to King. King was then released without any traffic citations being issued.

Based upon the information provided in Hegland's reports, the Secretary of State notified King that his driver's license would be suspended for a period of six months beginning March 18, 1991. Plaintiff filed a complaint for injunction in the circuit court of Cook County on February 14, 1991, seeking to prevent this suspension.

On February 15, 1991, King petitioned the Secretary for a rescission of the order of suspension. On March 12, 1991, King received an informal administrative hearing with the Secretary of State's Office. The hearing officer recommended that King's request for rescission be denied.

On March 14, 1991, prior to the formal ruling in the administrative hearing, King filed a motion for temporary restraining order. On March 15, 1991, the circuit court granted the restraining order which prevented the Secretary from suspending King's driver's license. On March 18, 1991, the Secretary of State adopted the hearing officer's findings of fact and entered an order denying King's request for rescission.

On March 25, 1991, the circuit court dismissed King's complaint for injunction, dissolved the temporary restraining order and granted King leave to file an amended complaint. King filed his amended complaint that day seeking administrative review of the Secretary's findings pursuant to the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, par. 3—101 *et seq.*), a declaratory judgment that section 11—501.6 was unconstitutional and an injunction preventing the Secretary from suspending King's license until the court could rule on the merits of the case. The court granted King's motion to stay the Secretary's decision pending the court's ruling on King's complaint for administrative review and declaratory judgment.

On August 13, 1991, the circuit court entered an order holding section 11—501.6 unconstitutional because it authorizes unreasonable searches and seizures. The court also enjoined the Secretary from enforcing the summary suspension provision of the statute against any driver in the State. Finally, the court found that the Secretary's findings of fact at the administrative hearing were against the manifest weight of the evidence.

The Secretary has appealed the trial court's decision directly to this court. (134 Ill. 2d R. 302(a).) We granted leave to the Illinois State Bar Association and the American Civil Liberties Union of Illinois to submit *amicus curiae* briefs in support of King's position. (134 Ill. 2d R. 345.) The issues we must address are whether the trial court had jurisdiction to consider King's complaint and, if so, whether chemical tests conducted pursuant to section 11—501.6 are unreasonable searches and seizures. Because we answer both of these questions in the affirmative, we need not consider whether the Secretary's findings were against the manifest weight of the evidence.

I

Initially, the Secretary argues that the trial court did not have jurisdiction to enter an order in this case. The Secretary avers that because King filed the complaint for administrative review as an amendment to the complaint for injunction, rather than as a separate action, the complaint is insufficient to grant the trial court subject matter jurisdiction. We disagree.

The Administrative Review Law provides that "[e]very action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected thereby." (Ill. Rev. Stat. 1989, ch. 110, par. 3—103.) The 35-day requirement is jurisdictional; "if a complaint is not timely filed, no jurisdiction is conferred on the circuit court and judicial review of the administrative decision is barred." *Lockett v. Chicago Police Board* (1990), 133 Ill. 2d 349, 354-55.

The Secretary cites *Burns v. Edgar* (1989), 178 Ill. App. 3d 708, for the proposition that King was required to file a separate action for administrative review. In

*Burns,* the plaintiff filed an action for injunction in the circuit court prior to the administrative agency's decision in the matter. The plaintiff never filed a complaint for administrative review. For this reason, the appellate court held the trial court lacked subject matter jurisdiction to hear the case. *Burns,* 178 Ill. App. 3d at 711.

*Burns* does not apply to the present case because King did file a complaint for administrative review. On March 25, 1991, seven days after the Secretary's decision, King filed his amended complaint which included a count requesting administrative review. This amended complaint was sufficient to vest the trial court with subject matter jurisdiction under the Administrative Review Law.

## II

We turn now to the merits of the case. Section 11—501.6 provides in pertinent part:

"§11—501.6. Driver involvement in personal injury or fatal motor vehicle accident—chemical test.

(a) Any person who drives or is in actual control of a motor vehicle upon the public highways of this State shall be deemed to have given consent to a breath test using a portable device as approved by the Department of Public Health or to a chemical test or tests of blood, breath, or urine for the purpose of determining the alcohol or other drug content of such person's blood if there is probable cause to believe that such person was the driver at fault, in whole or in part, for a motor vehicle accident which resulted in the death or personal injury of any person." (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.6(a).)

For purposes of this statute, personal injury is defined as "any injury that requires immediate professional attention in either a doctor's office or a medical facility." (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.6(g).) The results of any test performed under section 11—501.6 may be used as evidence in a civil or criminal proceed-

ing. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.6(e).) In addition, refusal to submit to the required tests will result in suspension of the individual's driver's license (Ill. Rev. Stat. 1989, ch. 95½, par. 6—206(a)(31)), and evidence of such refusal is admissible in a civil or criminal proceeding related to the individual's operation of a motor vehicle (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.6(f)).

As a preliminary matter, the Secretary contends that because King was not charged with a crime, evidence of his refusal will not be used in a criminal proceeding and, therefore, King has no standing to challenge the criminal provision of the statute. This argument is disingenuous. The fact that King passed the field sobriety tests and was not charged with driving under the influence tends to indicate that there was no probable cause to believe that he did so. The Secretary may not use this lack of probable cause as a shield to protect the validity of a search designed, at least in part, to establish the very probable cause which is lacking. Moreover, King is challenging the facial validity of section 11—501.6 rather than its application to him. For these reasons, we will consider the validity of section 11—501.6 in its entirety.

Under section 11—501.6, a search may be conducted if (1) an accident has occurred which resulted in death or personal injury, and (2) there is probable cause to believe that the driver to be tested was at least partially at fault for the accident. It is important to recognize that the probable cause element of section 11—501.6 relates to a driver's fault for the accident, but does not require any grounds to suspect that a driver is under the influence of drugs or alcohol. This is in stark contrast to the other statutes which authorize the testing of drivers for intoxication only if such probable cause is present. See Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.5 (authorizing breath, blood and urine tests prior to arrest if there is

probable cause to believe the individual was driving under the influence of alcohol or other drugs); Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1 (authorizing chemical tests of breath, blood and urine of driver after arrest for driving under the influence).

The fourth amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ***." (U.S. Const., amend. IV.) The parties agree that the tests prescribed in section 11—501.6 are searches under the fourth amendment.

The purpose of the fourth amendment is to protect the privacy and security of individuals against arbitrary invasions by the government. (*New Jersey v. T.L.O.* (1985), 469 U.S. 325, 335, 83 L. Ed. 2d 720, 730, 105 S. Ct. 733, 739.) The fourth amendment only proscribes searches and seizures which are unreasonable. (*Skinner v. Railway Labor Executives' Association* (1989), 489 U.S. 602, 619, 103 L. Ed. 2d 639, 661, 109 S. Ct. 1402, 1414.) Whether a particular search is reasonable depends on the facts and circumstances giving rise to the search as well as the nature of the search itself. This determination must be made by "balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse* (1979), 440 U.S. 648, 654, 59 L. Ed. 2d 660, 667-68, 99 S. Ct. 1391, 1396.

In the context of a criminal investigation, the balance of interests will ordinarily require a judicial warrant issued upon probable cause. However, "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable' " neither is constitutionally required. (*Griffin v. Wisconsin* (1987), 483 U.S. 868, 873, 97 L. Ed. 2d 709, 717, 107 S. Ct. 3164, 3168, quoting *New Jersey v. T.L.O.*, 469 U.S. at 351, 83 L. Ed. 2d at 741, 105 S. Ct.

at 748.) Although courts will generally require, at a minimum, some quantum of individualized suspicion, the Supreme Court has stated:

"[A] showing of individualized suspicion is not a constitutional floor, below which a search must be presumed unreasonable. [Citation.] In limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion." (*Skinner*, 489 U.S. at 624, 103 L. Ed. 2d at 664, 109 S. Ct. at 1417.)

In those instances in which a search or seizure has been deemed reasonable without some level of individualized suspicion, either the intrusions were minor (see, *e.g.*, *Michigan Department of State Police v. Sitz* (1990), 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481 (stop of car at stationary roadblock checkpoint for 15 to 20 seconds reasonable in light of State's interest in preventing harm from drunk drivers); *People v. Bartley* (1985), 109 Ill. 2d 273 (same); *United States v. Martinez-Fuerte* (1976), 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074 (stop of car at stationary roadblock near border reasonable due to government's interest in controlling illegal immigration)), or the person to be searched had a diminished expectation of privacy (see, *e.g.*, *Skinner*, 489 U.S. 602, 103 L. Ed. 2d 639, 109 S. Ct. 1402; *People v. Adams* (1992), 149 Ill. 2d 331; *New York v. Burger* (1987), 482 U.S. 691, 96 L. Ed. 2d 601, 107 S. Ct. 2636 (search of junkyard reasonable because owner's expectation of privacy lessened by virtue of participation in closely regulated business); see also *Griffin*, 483 U.S. 868, 97 L. Ed. 2d 709, 107 S. Ct. 3164 (search of probationer's home supported only by reasonable suspicion which did not

amount to probable cause valid because he had diminished expectation of privacy)).

The Secretary argues that section 11–501.6 falls within the special governmental needs exception to the probable cause requirement. In essence, the Secretary contends that due to the State's compelling interest in protecting its citizens from drunk drivers, the probable cause requirement of the fourth amendment is vitiated by the fact that a driver may be at least partially at fault for an accident which results in serious personal injury. The Secretary relies on the Supreme Court's decision in *Skinner* and this court's decision in *People v. Adams* (1992), 149 Ill. 2d 331, as support for this position.

In *Skinner*, the Supreme Court considered the constitutionality of a Federal Railroad Administration regulation which, in certain circumstances, required railroad employees to submit to chemical analyses of their breath, blood and urine. The regulations at issue in *Skinner* applied when the employee was directly involved in a major train accident (see 49 C.F.R. §219.201 *et seq.* (1991)), or when a supervisor had a reasonable suspicion that either an employee's acts or omissions contributed to a reportable accident or that the employee was under the influence of alcohol (49 C.F.R. §219.301 *et seq.* (1991)). The Court found that the regulations were constitutional because they furthered the government's interest in promoting rail safety and because the covered employees had a diminished expectation of privacy. *Skinner*, 489 U.S. at 634, 103 L. Ed. 2d at 670, 109 S. Ct. at 1422.

*Skinner* is distinguishable from the present case in two important areas. First, it was not disputed that the tests in *Skinner* were implemented to prevent railroad accidents rather than to aid in the criminal prosecution of employees. The Court noted that it was unclear whether its decision would be different if evidence col-

lected under the regulatory scheme were routinely used in criminal proceedings. (*Skinner*, 489 U.S. at 621 n.5, 103 L. Ed. 2d at 662 n.5, 109 S. Ct. at 1415 n.5.) Conversely, one of the stated purposes for a search under section 11—501.6 is the collection of evidence for use in a criminal proceeding. Second, the Court in *Skinner* recognized that railroad employees have a diminished expectation of privacy based on "their participation in an industry that is regulated pervasively to ensure safety." (*Skinner*, 489 U.S. at 627, 103 L. Ed. 2d at 666, 109 S. Ct. at 1418.) No such diminished expectation of privacy exists with respect to drivers tested under section 11—501.6. Although the State may regulate the operation of motor vehicles, it is well settled that an individual does not lose his reasonable expectation of privacy by virtue of his status as a driver. (*Delaware v. Prouse* (1979), 440 U.S. 648, 662, 59 L. Ed. 2d 660, 673, 99 S. Ct. 1391, 1400-01.) Because these distinctions fundamentally alter the balance of interests, we find that *Skinner* is not controlling. We note that the Pennsylvania Supreme Court reached the same conclusion when considering the constitutionality of a similar statute under *Skinner*. See *Commonwealth v. Kohl* (Penn. Sept. 16, 1992), Nos. 183 & 188 E.D. Appeal Doc. 1990, No. 11 E.D. Appeal Doc. 1991 cons.

Similarly, we find the Secretary's reliance on *Adams* is misplaced. In *Adams*, we upheld the constitutionality of the testing provisions in section 5—5—3(g) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(g)). Under that statute, a person convicted of specified sex offenses must automatically undergo a blood test to determine if he or she is infected with the human immunodeficiency virus (HIV), the virus which causes AIDS. In reaching our decision, we noted that the State has a compelling interest in protecting its citizens from AIDS (*Adams*, 149 Ill. 2d at 343), and that

the testing provisions of section 5—5—3(g) apply to offenses which may be considered high-risk activity for transmission of HIV. We found that an individualized suspicion standard was especially inappropriate because there are no outward signs of HIV infection. (*Adams*, 149 Ill. 2d at 348.) Moreover, unlike section 11—501.6, the testing provision in *Adams* was not used to gather evidence for a criminal proceeding. (*Adams*, 149 Ill. 2d at 346.) With respect to the intrusion on the offender's fourth amendment interest in privacy, it was significant that the testing provisions were not triggered until after a conviction, at which time the offender. necessarily had a diminished expectation of privacy. *Adams*, 149 Ill. 2d at 348.

Even though neither *Skinner* nor *Adams* is controlling, arguably the special needs exception could still apply to this case. It is clear that the State has a compelling interest in protecting its citizens from the hazards caused by intoxicated drivers. Illinois has decided to promote this interest through a combination of civil and criminal provisions. (*Cf. People v. Esposito* (1988), 121 Ill. 2d 491 (summary suspension of driver's license under section 11—501.1 is civil proceeding which promotes State's interest in protecting citizens from dangers of drunk drivers); Ill. Rev. Stat. 1989, ch. 95½, par. 11—501 (making it a Class A misdemeanor to drive under the influence of drugs or alcohol).) By facilitating the use of summary suspension proceedings, section 11—501.6 removes intoxicated drivers from the road. In addition, the threat of summary suspension helps deter others from driving while intoxicated. To the extent that section 11—501.6 accomplishes these goals without relying on criminal sanctions, it serves the State's interests beyond the need for normal law enforcement.

However, section 11—501.6 is also intended to gather evidence for use in a criminal proceeding. Because sec-

tion 11—501.6 is designed to further this law enforcement purpose, we do not believe it falls within the special needs exception to the probable cause requirement. We are aware that the Supreme Court has upheld searches under this special exception even though evidence obtained during the search was also used in a criminal trial. (See, *e.g., Griffin*, 483 U.S. 868, 97 L. Ed. 2d 709, 107 S. Ct. 3164; *Burger*, 482 U.S. 691, 96 L. Ed. 2d 601, 107 S. Ct. 2636; *New Jersey v. T.L.O.*, 469 U.S. 325, 83 L. Ed. 2d 720, 105 S. Ct. 733.) In those cases, the Court held that use of the evidence in a criminal trial was permitted because the evidence was found incidentally during a search which was constitutionally valid under the special needs exception. In the present case, one of the stated purposes of the search is to gather evidence for criminal prosecution. It can hardly be said that such evidence is incidental to a special needs search. Thus, section 11—501.6 does not fall within the category of special governmental needs outside the normal need for law enforcement.

In balancing the interests in this case, we find no reason to deviate from the probable cause standard usually applicable to a criminal case. Although the statute promotes the laudable goal of public safety, this factor alone is not sufficient to justify a relaxing of the constitutional requirements in light of the clearly expressed criminal applications of the statute. Moreover, we believe the objective and subjective intrusions on the driver's reasonable expectation of privacy are significant.

The objective intrusion is "measured by the duration of the seizure and the intensity of the investigation." (*Sitz*, 496 U.S. at 452, 110 L. Ed. 2d at 421, 110 S. Ct. at 2486.) We note that *Sitz* and *Bartley* involved stationary roadblocks at which motorists were stopped in a systematic manner for approximately 15 to 20 seconds. Although the stops in both cases were found to be

reasonable even without individualized suspicion, the Supreme Court in *Sitz* provided the following caveat:

> "Detention of particular motorists for more extensive field sobriety testing may require satisfaction of an individualized suspicion standard." (*Sitz*, 496 U.S. at 451, 110 L. Ed. 2d at 420, 110 S. Ct. at 2485, citing *United States v. Martinez-Fuerte* (1976), 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074.)

Unlike the brief stops in *Bartley* and *Sitz*, prior to administering a breath test under section 11–501.6, the testing officer must observe the driver for at least 20 minutes. While the length of time is not necessarily controlling, it is a factor which must be considered.

The subjective intrusion is also significant. The subjective intrusion to be considered is "the fear and surprise engendered in law-abiding motorists" by the search. (*Sitz*, 496 U.S. at 452, 110 L. Ed. 2d at 421, 110 S. Ct. at 2486.) In the present case, we believe that requiring a motorist to accompany a police officer to the police station for testing will engender fear in generally law-abiding citizens. This is especially true because the motorist will necessarily have been involved in an accident and may be shaken from that experience. Further, where, as here, the request for the test is made after the motorist passes a field sobriety test the subjective fear is even greater.

We do not agree with the Secretary's assertion that a probable cause requirement will unduly hamper the State's ability to protect its citizens from drunk drivers. This argument is belied by the fact that under section 11–501.6 an officer must have probable cause to believe that a motorist was at least partially at fault for the accident. If the officer is able to determine probable cause of fault for an accident he may not have witnessed, then it is not overly burdensome to require him to determine probable cause that a driver involved may have been

drinking. The officer will often have an opportunity to talk to the drivers and observe their behavior after the accident. Given the relatively low threshold required to show probable cause of intoxication, we do not believe that the State's interests will be left unprotected. In this light, we note that nothing in our decision today is intended to affect the legitimacy of minor intrusions such as the roadblock stops approved in *Bartley.*

### III

In addition to the Federal constitutional infirmities, section 11—501.6 violates article I, section 6, of the Illinois Constitution of 1970. That section provides:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, *invasions of privacy* or interceptions of communications by eavesdropping devices or other means." (Emphasis added.) (Ill. Const. 1970, art. I, §6.)

Because the Illinois Constitution recognizes a zone of privacy, the protections afforded by the Illinois Constitution go beyond the guarantees of the Federal Constitution. *In re May 1991 Will County Grand Jury* (1992), 152 Ill. 2d 381.

In *Will County Grand Jury,* we held that probable cause was required before a grand jury could subpoena head and pubic hairs from an individual under investigation but not charged with any offense. In reaching that decision, we stated that "cutting a person's hair is less intrusive than removing blood from his body." (152 Ill. 2d at 399.) We believe that requiring a urine sample is more intrusive than cutting a person's hair and that a chemical analysis of an individual's breath is at least as intrusive as requiring a hair sample for testing. It follows that chemical tests authorized under section 11—501.6 cannot be conducted when the individual is not

charged with any offense unless there is probable cause to believe the individual committed a crime. *Will County Grand Jury*, 152 Ill. 2d at 399-400; *cf. Adams*, 149 Ill. 2d 331 (permitting blood test for HIV *after* conviction of specified sex offense).

The dissent points out the alarming number of deaths and injuries caused by drunk drivers annually. We recognize the human tragedies behind these numbers, and note that this court has on many occasions upheld the validity of laws enacted to combat the problem of intoxicated drivers. (See, *e.g., Bartley*, 109 Ill. 2d 273; *People v. Gerke* (1988), 123 Ill. 2d 85 (statutory summary suspension does not violate due process); *People v. Esposito* (1988), 121 Ill. 2d 491 (statutory summary suspension does not violate equal protection).) However, despite the laudable goal of combating drunk driving, we cannot uphold the current statute in the face of the constitutional guarantees against unreasonable searches and seizures. Because the statute authorizes a search and seizure of a motorist without the slightest indication that the motorist has been drinking, we find that it is unconstitutional.

For the foregoing reasons, we hold that section 11—501.6 violates the fourth amendment to the Federal Constitution as well as article I, section 6, of the Illinois Constitution of 1970. As the statute which authorized the search of King was unconstitutional, it follows that his refusal to submit to the search may not result in the suspension of his driver's license.

The judgment of the circuit court is affirmed.

*Affirmed.*

CHIEF JUSTICE MILLER, dissenting:

The majority finds that section 11—501.6 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.6) violates both the fourth amendment to the

United States Constitution and article I, section 6, of the Illinois Constitution of 1970. I respectfully dissent.

Like the majority, I would apply the special needs test to the present case. In *Michigan Department of State Police v. Sitz* (1990), 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481, the Court found the problem of intoxicated drivers sufficient to justify use of the special needs test. Because the underlying State interest in *Sitz* is the same as in the instant case, I believe the special needs test is appropriate.

Whether a particular practice is permissible under the special needs test is judged by balancing its intrusion on the individual's fourth amendment interests against its promotion of legitimate governmental interests. (*Delaware v. Prouse* (1979), 440 U.S. 648, 654, 59 L. Ed. 2d 660, 667-68, 99 S. Ct. 1391, 1396.) The majority agrees that the State has a compelling interest in protecting its citizens from intoxicated drivers. The majority, however, finds this interest insufficient to justify the burden caused by section 11—501.6. I disagree.

The majority holds that because information gathered under section 11—501.6 may be used as evidence in a criminal proceeding, the exemption available under the special needs test is inappropriate. In addition to its evidence-gathering function, section 11—501.6 has a significant deterrent effect. If drivers know they may be tested for intoxication after causing an accident and the results of the tests may be used against them in a subsequent prosecution, they will be less likely to drive while intoxicated. The evidentiary function of section 11—501.6, therefore, serves to increase its deterrent effect.

I believe the present case is analogous to *Skinner v. Railway Labor Executives' Association* (1989), 489 U.S. 602, 103 L. Ed. 2d 639, 109 S. Ct. 1402. In *Skinner*, the Court held the government interest in deterring intoxi-

cated train operators justified subjecting employees involved in major train accidents to blood, breath and urine tests. (*Skinner*, 489 U.S. 602, 103 L. Ed. 2d 639, 109 S. Ct. 1042.) In reaching this decision, the Court found that railroad employees had a diminished expectation of privacy because of their participation in a regulated industry and that authorities exercised limited discretion in ordering the tests. (*Skinner*, 489 U.S. at 634, 103 L. Ed. 2d at 670, 109 S. Ct. at 1422.) The majority distinguishes *Skinner* on grounds that those subject to testing in *Skinner* had a diminished expectation of privacy, while those subject to testing under section 11—501.6 do not.

I believe those subject to testing under section 11—501.6 do have a diminished expectation of privacy. While drivers do not lose all reasonable expectation of privacy due to their status as drivers, the State does regulate the use of automobiles and highways. A person's reasonable expectation of privacy, therefore, is decreased when he drives an automobile. Additionally, section 11—501.6 deems a driver to have consented to the tests in question prior to driving on the public highways of Illinois. Therefore, drivers are on notice that if probable cause exists to believe they were at fault in an accident involving death or personal injury, they may be tested for intoxication through blood, breath or urine tests.

As in *Skinner*, law enforcement personnel have limited discretion in applying section 11—501.6. Only where probable cause exists that a driver is at fault in an accident involving death or personal injury may section 11—501.6 be invoked.

Application of section 11—501.6 also imposes minimal time restraints. Drivers expect to be detained after involvement in an accident which results in death or personal injury. The additional time required to undergo section 11—501.6 tests is a minimal inconvenience relative

to the other consequences of involvement in such an accident.

Because I believe that the special needs balancing test weighs in favor of the State, and agree with the State constitutional analysis contained in Justice Heiple's dissent, I respectfully dissent from the majority opinion.

JUSTICE HEIPLE, also dissenting:

On November 3, 1991, the Atlanta Journal-Constitution offered a compelling account of the state of this nation's highways: "An estimated 22,084 Americans were killed [in 1990] in crashes involving intoxicated drivers, nearly equaling the number of murders and tripling the number believed slain in drug disputes. *** An additional 355,000 people were injured in DUI crashes." (*Georgia's DUI Scandal*, Atlanta Journal-Constitution, November 3, 1991, §A, at 1.) This was by no means atypical. "Drunk drivers cause an annual death toll of over 25,000, and in the same time span cause nearly one million personal injuries and more than five billion dollars in property damage." 4 W. LaFave, Search & Seizure §10.8(d), at 71 (2d ed. 1987).

Over 20,000 lives lost per year. Many times that injured. When you factor in friends and relatives, it is safe to assume that over a million people are adversely affected by drunks on the road every year. The loss that society suffers due to drunks on the road is staggering.

This backdrop is important because it illuminates the need that faced our General Assembly when it passed the statute that the majority today finds unconstitutional. This need is stated quite simply: to rid our roads of drunk drivers. Coupled with this need is the unique problem that accompanies any approach designed to keep drunks off the roads—the transitory nature of intoxication.

Faced with these facts, the legislature came up with an appropriate compromise between a person's right to be left alone and the general population's right to be left alive. It conditioned the State's grant of driving privileges (a grant that is certainly within the State's power to give and withhold) upon the consent by the driver to an alcohol test should he be at fault in an accident. Failure to live up to the driver's end of the bargain would result in summary suspension of his license; not as punishment, but rather to help rid the road of potential drunk drivers. This exchange between the State and its drivers is a fair one.

I therefore find it incredible that the court today holds that this agreement between State and driver violates the United States and Illinois Constitutions. I write separately to voice my strong disagreement with the reading that the majority gives to those documents.

I first address the majority's analysis of the Federal Constitution's fourth amendment. The majority correctly concludes that these tests are searches within the meaning of the amendment. It is at this point that the majority and I part ways, however.

Relevant to the constitutionality of the tests at issue is *Skinner v. Railway Labor Executives' Association* (1989), 489 U.S. 602, 103 L. Ed. 2d 639, 109 S. Ct. 1402. In that case, the United States Supreme Court interpreted the requirements that the fourth amendment imposes upon a government before it may conduct a search of a person. That Court's reasoning fully supports the constitutionality of the tests at issue.

As noted in the majority opinion, *Skinner* involved railway employees who were required to submit to alcohol tests if they were involved in certain types of accidents, regardless of whether there was individualized suspicion of intoxication. The Supreme Court held that the fourth amendment did not prohibit these tests. While

that Court agreed that such tests are searches within the meaning of the amendment, it ruled that the searches were acceptable, in part because of the need for government regulation of the railroad industry.

The Court in *Skinner* took great care to point out that the reasonableness of a search depends on the surrounding circumstances. The circumstances that the *Skinner* Court gave importance to were: the fact that the railway industry is heavily regulated; the fact that delay would frustrate the government's purpose, since intoxication is not lasting; and the relatively minor intrusion that these tests impose.

In the instant case, the statute deals with the State's highways. Although highways are not as regulated as railways, they are nevertheless highly regulated. The final two circumstances cited in *Skinner* are present here for precisely the same reasons: delay in testing while individualized suspicion can be established would frustrate the government's objective of identifying and removing drunk drivers from the roads, and the tests are minimally intrusive.

Finally, great weight should be given to the fact that a person consents to this search by driving on the State's highways, pursuant to the statute at issue. This consent is valid and enforceable. The State is not required to grant driving privileges to everybody. It is well within the State's discretion to limit driving privileges to those who agree to a minimally intrusive search for intoxication after they cause an accident. Having consented to this search, a driver is in no position to complain when the State seeks to enforce this agreement.

The cumulation of these circumstances indicates that, as in *Skinner*, the alcohol tests are reasonable searches and not prohibited by the fourth amendment.

The United States Supreme Court's decision in *Michigan Department of State Police v. Sitz* (1990), 496 U.S.

444, 110 L. Ed. 2d 412, 110 S. Ct. 2481, and this court's opinion in *People v. Bartley* (1985), 109 Ill. 2d 273, provide further support for the constitutionality of these tests. In *Sitz*, the United States Supreme Court was faced with the constitutionality of highway sobriety checkpoints. The Court ruled that these were searches, but concluded that they were reasonable and therefore constitutional despite the lack of individualized suspicion. This court came to the same conclusion in *Bartley*.

The majority correctly points out that underlying the rationale in both *Sitz* and *Bartley* was the short amount of time (less than a minute) that the search took to conduct. Here, on the other hand, the driver must be taken into the police station, given field sobriety tests, and then undergo the alcohol tests. In the appellee's case, this took 20 minutes.

What the majority fails to note is that the driver is brought to the station and given the field sobriety tests under a different statute than the one held unconstitutional today. Regardless of whether the statute under attack is enforced, the driver is already committed to most of the detention time. The additional test required of the driver adds only a short amount of time to this detention, and like *Sitz* and *Bartley*, is not unreasonable.

Further, it should be noted that these tests are administered only after a person causes an accident. A person involved in an accident normally expects to be delayed for a significant amount of time. Therefore, gone from the analyses in *Sitz* and *Bartley* is any expectation the driver might have of promptly resuming his trip.

Finally, I disagree with the majority that the search violates the Illinois Constitution. The majority's entire analysis on this point is simply a comparison to our recent decision in *In re May 1991 Will County Grand Jury* (1992), 152 Ill. 2d 381.

I do not find the cases factually similar. In *Will County*, we discussed a grand jury's ability to subpoena hair samples from a person who is not charged with any offense. The instant case involves a police officer at the scene of an accident instead of a cloistered grand jury; it involves a person who, as a driver, has less of an expectation of privacy than a person in his home or on the street; it involves the reasoned anticipation by the General Assembly that a person who causes an accident may likely be intoxicated; it involves a need for quick investigation since drunkenness is fleeting; and it involves a well-documented situation that causes thousands of deaths per year. *Will County* is inapposite.

Deaths due to drunk driving are reaching epic proportions. Before allowing a person to drive, a State should be allowed to require the minimal search at issue here as a condition to granting driving privileges. A person should be allowed to consent to such a search by accepting the driving privileges as well as all the responsibilities that go with those privileges and should be held to this consent. The People should be allowed to live with the safer highways that the enforcement of such agreements will produce. Neither the United States nor the Illinois Constitution is a barrier to this attempt to create safer roads. I dissent.