NOTICE: Under Supreme Court Rule 367 a party has 21 days after the

filing of the opinion to request a rehearing. Also, opinions are

subject to modification, correction or withdrawal at anytime prior

to issuance of the mandate by the Clerk of the Court. Therefore,

because the following slip opinion is being made available prior to

the Court's final action in this matter, it cannot be considered

the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of

Decisions in the Official Reports advance sheets following final

action by the Court.

                                    

                 Docket No. 79404--Agenda 17--May 1996.

       CHRISTOPHER J. FINK, Appellee, v. GEORGE RYAN, Secretary of

                            State, Appellant.

                     Opinion filed October 18, 1996.

     JUSTICE MILLER delivered the opinion of the court:

     This appeal results from a final order entered in the circuit

court of Lake County finding a portion of the Illinois Vehicle Code

(625 ILCS 5/11--501.6 (West 1994)) unconstitutional under the

fourth amendment of the United States Constitution.

     The portion of the Vehicle Code found unconstitutional

provided that if a traffic accident occurred in which death or

personal injury resulted and a driver involved in the accident had

been issued a Uniform Traffic Ticket for a nonequipment offense,

the driver would be subject to chemical testing to determine

whether the person was impaired by drugs or alcohol. See 625 ILCS

5/11--501.6(a) (West 1994). Following the circuit court's ruling,

the Secretary of State appealed directly to this court pursuant to

Supreme Court Rule 302(a). 134 Ill. 2d R. 302(a). We reverse and

remand.

                               I. BACKGROUND

     The circuit court found section 11--501.6 of the Illinois

Vehicle Code unconstitutional. The statute provides:

               "Any person who drives or is in actual control of a

          motor vehicle upon the public highways of this State and

          who has been involved in a personal injury or fatal motor

          vehicle accident, shall be deemed to have given consent

          to a breath test *** or to a chemical test or tests of

          blood, breath, or urine for the purpose of determining

          the alcohol or other drug content of such person's blood

          if arrested as evidenced by the issuance of a Uniform

          Traffic Ticket for any violation of the Illinois Vehicle

          Code or a similar provision of a local ordinance, with

          the exception of equipment violations contained in

          Chapter 12 of this Code, or similar provisions of local

          ordinances." 625 ILCS 5/11--501.6(a) (West 1994).

     The statute further provides that a "personal injury shall

include any type A injury." 625 ILCS 5/11--501.6(g) (West 1994).

According to the statute, type A injuries "shall include severely

bleeding wounds, distorted extremities, and injuries that require

the injured party to be carried from the scene." 625 ILCS 5/11--

501.6(g) (West 1994).

     The circuit court's rationale in finding the statute

unconstitutional was that the statute was "no different,

substantively" than a predecessor statute (Ill. Rev. Stat. 1991,

ch. 95½, par. 11--501.6) found unconstitutional by this court in

King v. Ryan, 153 Ill. 2d 449 (1992). Because of the circuit

court's reliance on King, a review of King is necessary.

     This court in King held that the predecessor statute (Ill.

Rev. Stat. 1991, ch. 95½, par. 11--501.6) violated the fourth

amendment of the United States Constitution and article I, section

6, of the Illinois Constitution of 1970. The court found that the

"special needs" exception to the fourth amendment did not apply to

the predecessor statute. King, 153 Ill. 2d at 462. The court

therefore believed the predecessor statute's provision for chemical

testing of a driver absent a warrant or probable cause

determination was unconstitutional.

     As expressed by the Supreme Court, the "special needs"

exception to the fourth amendment states: "we have permitted

exceptions [to the fourth amendment] when `special needs, beyond

the normal need for law enforcement, make the warrant and probable-

cause requirement impracticable.' " Griffin v. Wisconsin, 483 U.S.

868, 873-74, 97 L. Ed. 2d 709, 717, 107 S. Ct. 3164, 3168 (1987),

quoting New Jersey v. T.L.O., 469 U.S. 325, 351, 83 L. Ed. 2d 720,

741, 105 S. Ct. 733, 748 (1985) (Blackmun, J., concurring in

judgment). The Supreme Court has found the warrant and probable

cause requirement impracticable in a variety of circumstances. Some

of these circumstances include: searches of government employees'

desks and offices (O'Connor v. Ortega, 480 U.S. 709, 94 L. Ed. 2d

714, 107 S. Ct. 1492 (1987)); searches of certain types of student

property by school officials (T.L.O., 469 U.S. 325, 83 L. Ed. 2d

720, 105 S. Ct. 733); roadblock searches identifying drunk drivers

(Michigan Department of State Police v. Sitz, 496 U.S. 444, 110 L.

Ed. 2d 412, 110 S. Ct. 2481 (1990)); roadblock searches identifying

illegal immigrants (United States v. Martinez-Fuerte, 428 U.S. 543,

49 L. Ed. 2d 1116, 96 S. Ct. 3074 (1976)); chemical testing of

railroad employees (Skinner v. Railway Labor Executives' Ass'n, 489

U.S. 602, 103 L. Ed. 2d 639, 109 S. Ct. 1402 (1989)); and

administrative searches of regulated businesses (New York v.

Burger, 482 U.S. 691, 96 L. Ed. 2d 601, 107 S. Ct. 2636 (1987)).

     The court in King noted that under the "special needs"

exception, a search or seizure may be reasonable absent

individualized suspicion in two types of cases: (1) when the

intrusion upon the person to be searched is minor; or (2) when the

person to be searched has a diminished expectation of privacy.

King, 153 Ill. 2d at 458-59. The court concluded that the person to

be tested under the predecessor statute in King fell into neither

of these two categories.

     In addition, the King court believed that under the Illinois

Constitution's right of privacy (Ill. Const. 1970, art. I, §6) a

driver could not be subject to chemical testing when the driver had

not been charged with an offense based upon probable cause. King,

153 Ill. 2d at 464-65. Accordingly, the court found that the

statute violated the Illinois Constitution as well.

                           II. THE PRESENT CASE

     On the evening of December 18, 1994, Christopher J. Fink drove

his car into a telephone pole. Fink's friend, Jeffrey Almeit, was

a passenger in the car. Fink and Almeit exited the car and found

their way to a nearby house. Paramedics and the police were called.

When the police arrived, paramedics were immobilizing Fink and

Almeit with cervical collars and back boards. The two were

transported to a local hospital. Before proceeding to the hospital,

police officers investigated the accident scene.

     At the hospital, Fink was issued a traffic ticket for failure

to reduce speed to avoid an accident. See 625 ILCS 5/11--601(a)

(West 1994). An officer requested that Fink submit to a blood-

alcohol content test and Fink was warned of the consequences if he

refused--the suspension of his driver's license. See 625 ILCS 5/11-

-501.6(c), (d) (West 1994). Fink consented to a blood test and a

nurse drew a blood sample. The sample revealed a blood-alcohol

concentration of 0.14. Later that night, Fink was released from the

hospital.

     The State attempted to proceed against Fink in two ways.

First, the State sent Fink notice that his driver's license was to

be suspended for three months pursuant to sections 11--501.6 and 6-

-208.1 (625 ILCS 5/11--501.6, 6--208.1 (West 1994)). Second, Fink

was charged with driving under the influence of alcohol (DUI). See

625 ILCS 5/11--501(a)(1) (West 1994). The DUI citation was premised

upon the 0.14 blood-alcohol content test result obtained under

section 11--501.6 (625 ILCS 5/11--501.6 (West 1994)).

     Fink filed a civil complaint for declaratory judgment asking

the circuit court to declare section 11--501.6 (625 ILCS 5/11--

501.6 (West 1994)) unconstitutional on its face as a violation of

the fourth amendment of the United States Constitution and article

I, section 6, of the Illinois Constitution. In the federal

constitutional claim, Fink argued that the statute allowed an

unreasonable search of a driver without probable cause to believe

that the driver was chemically impaired. In the state

constitutional claim, Fink argued that chemical testing violated a

driver's right to be free from unreasonable searches and that

chemical testing invaded a driver's right of privacy.

     The circuit court agreed with Fink, stating in its final

order: "That because the chemical tests results can still be used

in a criminal proceeding, the current version of Section 11--501.6

is no different, substantively, than the 1991 version of the

Statute which was struck down as unconstitutional in the case of

King v. Ryan ***." In addition, the circuit court stated "the 1994

version of 625 ILCS 5/11--501.6 is hereby declared unconstitutional

in that it sanctions unreasonable searches and seizures in

violation of the Fourth Amendment of the United States

Constitution."

     Because of the circuit court's ruling, Fink's driver's license

was not suspended and the 0.14 blood-alcohol content test result

became inadmissible in the DUI prosecution. Without this evidence,

the State moved to dismiss the DUI prosecution. The circuit court

allowed the State's motion. The Secretary of State appealed

directly to this court (134 Ill. 2d R. 302(a)) for review of the

circuit court's holding that section 11--501.6 is unconstitutional.

                              III. DISCUSSION

     Because a statute is presumed to be constitutional (People v.

Miller, 171 Ill. 2d 330, 333 (1996)), Fink "has the burden of

clearly establishing [the statute's] constitutional infirmity."

People v. Hickman, 163 Ill. 2d 250, 257 (1994). Given this court's

ruling in King, we may assume the legislature enacted the changes

found in section 11--501.6 to address the constitutional concerns

expressed in that case. "Where statutes are enacted after judicial

opinions are published, it must be presumed that the legislature

acted with knowledge of the prevailing case law." Hickman, 163 Ill.

2d at 262.

     The purpose of the amended statute, though not explicitly

stated, may be found in its language and structure: to reduce the

dangers posed by chemically impaired drivers by providing for the

suspension of their licenses and by deterring others from engaging

in similar misconduct. As King observed, "the State has a

compelling interest in protecting its citizens from the hazards

caused by intoxicated drivers." King, 153 Ill. 2d at 461. To the

extent that a statute removes chemically impaired drivers from the

road "without relying on criminal sanctions, it serves the State's

interests beyond the need for normal law enforcement." King, 153

Ill. 2d at 461.

     Illinois has a special need to suspend the licenses of

chemically impaired drivers and to deter others from driving while

chemically impaired. See King, 153 Ill. 2d at 461. This specialized

need goes beyond the need for normal law enforcement. Thus, a

search may be reasonable absent individualized suspicion if a

chemical test is nonintrusive or a driver's expectation of privacy

has been reduced. See King, 153 Ill. 2d at 458-59.

          A. Constitutionality Under the Fourth Amendment of the

                        United States Constitution

     Presented with the problems caused by chemically impaired

drivers in the state, the legislature enacted the statute later

declared unconstitutional in King. In response to this court's

holding in King, the legislature amended the statute by: (1)

deleting the requirement that chemical testing be premised upon a

driver's fault in causing an accident; (2) deleting the provision

that chemical test results could be used in civil and criminal

proceedings; (3) adding a requirement that chemical testing be

premised upon the issuance of a Uniform Traffic Ticket for a non-

equipment traffic offense; and (4) defining with more particularity

the types of "personal injury" that trigger the chemical testing

provision. Compare Ill. Rev. Stat. 1991, ch. 95½, par. 11--501.6,

with 625 ILCS 5/11--501.6 (West 1994).

     The legislature did not alter two components in the statute.

First, the legislature retained the implied-consent provision of

the predecessor statute. Second, the legislature did not require an

individualized suspicion of chemical impairment before subjecting

a driver to chemical testing. Compare Ill. Rev. Stat. 1991, ch.

95½, par. 11--501.6, with 625 ILCS 5/11--501.6 (West 1994).

     We believe that the changes made by the legislature in

response to King reduce the intrusiveness of chemical testing and

allow for testing only in those situations in which a driver's

expectation of privacy is diminished. Like the railroad industry in

Skinner, 489 U.S. 602, 103 L. Ed. 2d 639, 109 S. Ct. 1402, and the

junkyard business in Burger, 482 U.S. 691, 96 L. Ed. 2d 601, 107 S.

Ct. 2636, the highways of Illinois are highly regulated. The

Vehicle Code comprises 404 pages in the Illinois Compiled Statutes

(West 1994) covering a broad range of subjects from ambulances (625

ILCS 5/1--102.01 (West 1994)) to school zones (625 ILCS 5/11--605

(West 1994)).

     Although a driver does not "lose all reasonable expectation of

privacy simply because the automobile and its use are subject to

government regulation" (Delaware v. Prouse, 440 U.S. 648, 662, 59

L. Ed. 2d 660, 673, 99 S. Ct. 1391, 1400 (1979)), the regulation of

automobiles in Illinois reduces a driver's expectation of privacy.

While driving on the road, one reasonably expects less privacy than

one expects within the confines of a residence. As the Supreme

Court has noted in the context of border checkpoints, "one's

expectation of privacy in an automobile and of freedom in its

operation are significantly different from the traditional

expectation of privacy and freedom in one's residence." Martinez-

Fuerte, 428 U.S. at 561, 49 L. Ed. 2d at 1130, 96 S. Ct. at 3084-

85.

     Further, under the predecessor statute, personal injury

included any injury requiring "immediate professional attention in

either a doctor's office or a medical facility." Ill. Rev. Stat.

1991, ch. 95½, par. 11--501.6(g). Under the amended statute, the

legislature narrowed the spectrum of drivers subject to chemical

testing. Under section 11--501.6(g), personal injuries "shall

include any type A injury *** [which] *** shall include severely

bleeding wounds, distorted extremities, and injuries that require

the injured party to be carried from the scene." 625 ILCS 5/11--

501.6(g) (West 1994). We believe that the legislature in amending

the statute intended to limit the personal injury requirement of

section 11--501.6 to type A injuries. We further believe that type

A injuries are limited to those listed in section 11--501.6(g) (625

ILCS 5/11--501.6(g) (West 1994)).

     Accidents involving a fatality still trigger the chemical

testing provision. However, personal injury requiring only a visit

to a doctor's office or a medical facility no longer can be the

basis for testing. Thus, the legislature's more particularized

definition of type A injuries subjects a driver to chemical testing

in only the more serious accidents. No reasonable driver expects to

leave the scene of a serious accident moments after its occurrence.

With law enforcement personnel investigating the accident and other

personnel attending to the participants' physical conditions, a

driver expects less privacy.

     In addition, any driver subject to chemical testing under the

amended statute has a statutory duty to remain at the scene of the

accident, render aid to injured parties, and exchange basic

information with those involved. See 625 ILCS 5/11--401, 11--403

(West 1994). Given the amount of time required to attend to law

enforcement and emergency medical needs, the addition of a chemical

test is minimally intrusive. Thus, by the very nature of the

circumstances in which drivers find themselves, the legislature has

imposed testing only when a driver's expectation of privacy has

been diminished and a test is minimally intrusive.

     Finally, the amended statute premises chemical testing on an

"arrest[ ] as evidenced by the issuance of a Uniform Traffic

Ticket" for a nonequipment violation of the Vehicle Code. 625 ILCS

5/11--501.6(a) (West 1994). Drivers issued Uniform Traffic Tickets

are released only after posting bail in the form of a current

Illinois driver's license, a bond certificate, or cash. 155 Ill. 2d

R. 526. In Terry v. Ohio, the Supreme Court noted that "[a]n arrest

*** is inevitably accompanied by future interference with the

individual's freedom of movement, whether or not trial or

conviction ultimately follows." Terry v. Ohio, 392 U.S. 1, 26, 20

L. Ed. 2d 889, 909, 88 S. Ct. 1868, 1882 (1968). Because the

movement of an arrested driver is already subject to restrictions,

the administering of a chemical test poses a minimal additional

intrusion.

     In sum, we believe that under the amended statute (625 ILCS

5/11--501.6 (West 1994)), a driver will be subject to chemical

testing only in situations in which the intrusiveness of the search

has been reduced and a driver's expectation of privacy has been

diminished. The intrusion upon an arrested driver is minimal or

nonexistent depending upon the length of time required by law

enforcement personnel to process the accident scene and emergency

medical personnel to attend to the injured parties. Additionally,

a driver's expectation of privacy is diminished because a driver is

operating a vehicle in a highly regulated environment.

     Thus, we conclude the legislature has enacted a statute that

falls within the "special needs" exception to the fourth amendment.

The State of Illinois has a special need beyond the normal needs of

law enforcement to determine whether drivers are chemically

impaired and to suspend those drivers' licenses. Under the

limitations contained in the amended statute, drivers are subject

to chemical testing only when testing will be minimally intrusive

and only after a driver's expectations of privacy have been further

diminished by the factors set forth in the statute.

     Fink argues, however, that the "special needs" exception to

the warrant and probable cause requirement is inapplicable because

the chemical test results may be used in a criminal proceeding. For

several reasons, Fink's claim fails.

     In support of his argument, Fink points to comments by the

King court that the predecessor statute fell outside the "special

needs" exception because "one of the stated purposes of the search

is to gather evidence for criminal prosecution." King, 153 Ill. 2d

at 462. However, as noted elsewhere in King (153 Ill. 2d at 459-

60), the Supreme Court has not yet determined whether evidence

obtained under the "special needs" exception may be routinely used

in criminal proceedings. See Skinner, 489 U.S. at 621 n.5, 103 L.

Ed. 2d at 662 n.5, 109 S. Ct. at 1415 n.5. King recognized that

"the Supreme Court has upheld searches under this special exception

even though evidence obtained during the search was also used in a

criminal trial." King, 153 Ill. 2d at 462. In those instances in

which searches were upheld, "the evidence was found incidentally

during a search which was constitutionally valid under the special

needs exception." King, 153 Ill. 2d at 462. If the admission of

chemical test results in a criminal proceeding is incidental to a

statute's purpose, application of the "special needs" exception is

not precluded.

     Following King, the legislature chose to delete those

provisions contained in the former statute that allowed the use of

chemical test results in criminal proceedings. Compare Ill. Rev.

Stat. 1991, ch. 95½, pars. 11--501.6(e), (f), with 625 ILCS 5/11--

501.6(e), (f) (West 1994). As we have already noted, the purpose of

the statute is to reduce the destruction caused by drunken drivers

on Illinois highways. This goal can be accomplished through civil

suspension proceedings of those who fail the test, as well as

through the provisions suspending the licenses of persons who

refuse to submit to chemical testing. By deleting any reference in

the amended statute to the use of test results in criminal

proceedings, the legislature has made clear that criminal

prosecution is only incidental to the primary purpose of the

statute. Because the use of test results in other proceedings is

incidental to the amended statute's purpose, the "special needs"

exception to the warrant and probable cause requirement remains

applicable. King, 153 Ill. 2d at 462.

          B. Constitutionality Under Article I, Section 6, of the

                           Illinois Constitution

     In the proceedings below, Fink also argued that the amended

statute violated article I, section 6, of the Illinois

Constitution. The trial judge did not resolve this issue and

instead based his decision solely on the fourth amendment. Fink

renews his state constitutional argument here in support of the

circuit court's judgment in his favor.

     Article I, section 6, of the Illinois Constitution provides:

               "The people shall have the right to be secure in

          their persons, houses, papers and other possessions

          against unreasonable searches, seizures, invasions of

          privacy or interceptions of communications by

          eavesdropping devices or other means." Ill. Const. 1970,

          art. I, §6.

     This court has construed the search and seizure language found

in section 6 in a manner that is consistent with the Supreme

Court's fourth amendment jurisprudence. People v. Mitchell, 165

Ill. 2d 211, 219 (1995); People v. Tisler, 103 Ill. 2d 226, 245

(1984). Because the amended statute falls within the "special

needs" exception to the fourth amendment, we believe that it also

comports with the search and seizure provision of article I,

section 6, of our state constitution.

     The additional recognition in section 6 of a zone of personal

privacy does not alter our analysis. As we have already determined,

a driver has a reduced expectation of privacy in those

circumstances in which the amended statute is applicable, for the

driver has been involved in a serious accident while operating a

vehicle in a highly regulated environment and, moreover, is under

arrest, as evidenced by the receipt of a traffic ticket.

     Contrary to Fink's argument, this court's earlier decision in

King does not control the resolution of this question. The King

court believed that the prior statute violated the privacy

provision of the Illinois Constitution because drivers could be

tested even though they had not been arrested and even though there

was no probable cause to believe they had committed an offense.

King, 153 Ill. 2d at 464-65. Under the amended statute, however, no

driver is chemically tested unless the person has been arrested,

based on the existence of probable cause, for a nonequipment

violation of the Vehicle Code. We thus believe that a driver's zone

of privacy is not unconstitutionally invaded when a driver is

chemically tested pursuant to section 11--501.6, and we therefore

conclude the amended statute does not violate article I, section 6,

of the Illinois Constitution.

                              IV. CONCLUSION

     For the foregoing reasons, we uphold the constitutionality of

section 11--501.6 (625 ILCS 5/11--501.6 (West 1994)). The statute

passes constitutional scrutiny under both the fourth amendment of

the United States Constitution and article I, section 6, of the

Illinois Constitution of 1970. Therefore, we reverse the circuit

court's judgment. This cause is remanded to the circuit court of

Lake County for further proceedings.

Reversed and remanded.

                                                                         

     CHIEF JUSTICE BILANDIC, dissenting: 

     I am not persuaded by the majority's attempt to distinguish

the instant statute from the 1991 version of the same statute that

this court declared unconstitutional in King v. Ryan, 153 Ill. 2d

449 (1992). As the trial court determined, the current statute is

"no different, substantively," from the 1991 statute. If King

correctly declared the 1991 statute unconstitutional, then we

should likewise hold that the current statute is unconstitutional.

If, on the other hand, the court now wishes to reconsider and

reject the majority opinion in King, it should do so expressly.

     Instead, the majority makes a disingenuous and unpersuasive

attempt to reconcile its decision with King. The majority claims

that the current statute is different in several respects from its

predecessor, and that these differences support a conclusion that

the current statute is constitutional. The purported distinctions,

however, are illusory and do not justify or permit a conclusion

different from that reached in King.

     The current statute, like its predecessor, essentially

provides that drivers give implied consent to the chemical testing

of their breath, blood or urine to determine its blood-alcohol or

drug content whenever a police officer determines that the driver

has been in an accident that resulted in death or personal injury

and that the driver committed a traffic violation. Neither statute

required any individualized suspicion that the driver was under the

influence of alcohol or drugs. The only differences between the two

statutes are that (1) the current statute defines "personal injury"

slightly differently than the 1991 statute; (2) under the current

statute, the police officer must give the driver involved in the

accident a traffic ticket, while the former statute required the

officer to determine that the affected driver was "at fault" in

causing the accident; and (3) the current statute, unlike the 1991

version, does not expressly state that the test results may be used

in criminal proceedings, but permits the use of test results in

such proceedings.

     In King this court declared the 1991 statute unconstitutional,

in part, because it violated the fourth amendment of the United

States Constitution. The court found that the provision that

authorized chemical testing of a driver without a warrant or

probable cause was unconstitutional. The King court concluded that

the "special needs" exception to the fourth amendment's warrant

requirement did not apply to the statute. King, 153 Ill. 2d at 462.

     Despite the obvious similarity between the current statute and

the 1991 version found unconstitutional in King, the majority

nevertheless finds that the current statute does not violate the

fourth amendment. In reaching this conclusion, the majority

opinion, like the King opinion, considers the "special needs" test.

Unlike King, however, the majority finds that the current statute

satisfies all of the requirements of that test.

     The majority first notes that the regulation of highways and

automobiles reduces a driver's expectation of privacy. The majority

acknowledges that the King opinion found that such regulation is

insufficient to excuse the warrant requirement. The majority

"distinguishes" King, however, on the basis of a supposedly

"narrower" definition of "personal injury" in the current statute.

In fact, the definition of "personal injury" under the current

statute is no narrower than under its predecessor. Both statutes

governed only those drivers involved in serious automobile

accidents. The majority here, unlike the King majority, simply

concludes that drivers involved in serious accidents have a

diminished expectation of privacy that justifies a warrantless

search. I continue to agree with the King court's conclusion that

such drivers do not necessarily have a diminished expectation of

privacy that justifies subjecting them to a warrantless search

without any requirement of individualized suspicion.

     The majority here also finds that the search authorized under

the current statute is "minimally intrusive" and thus satisfies the

second prong of the "special needs" test. In reaching this

conclusion, the majority notes that the driver subjected to the

search is already required to remain at the scene of a serious

accident while medical assistance is rendered to injured persons.

The opinion also notes that the search is permitted only when the

driver is "arrested as evidenced by the issuance of a Uniform

Traffic Ticket."

     The majority fails to adequately explain why these two factors

alter the King court's conclusion that the warrantless search at

issue is not minimally intrusive. King concluded that a warrantless

search to determine the blood-alcohol content of a person's breath,

blood or urine is intrusive and that the 1991 statute authorizing

such a search therefore did not satisfy the second prong of the

"special needs" test. King, 153 Ill. 2d at 462-63. At the time the

King court declared the 1991 statute unconstitutional, drivers were

also required to remain at the scene of a serious accident. See

Ill. Rev. Stat. 1991, ch. 95½, par. 11--403. The King court

nevertheless found that warrantless search at issue was an

"intrusive" search. King, 153 Ill. 2d at 462-63. Similarly, King

found the search intrusive even though the police officer

conducting the search was first required to conclude that the

driver was partially "at fault" in causing the accident. I fail to

see why a different conclusion is permissible here simply because

the officer must now issue a written traffic ticket. The current

statute is arguably even more intrusive than its predecessor, which

required a police officer to determine that there was some link

between the motorist's driving and the accident. Under the current

statute, no such causal link is required. If a motorist is charged

with any offense under the motor vehicle code (with the exception

of an equipment violation), then that person is susceptible to a

search regardless of whether the motorist is responsible for the

accident. The purported "distinctions" cited in the majority

opinion between the current statute and the statute declared

unconstitutional in King are not substantive differences, but

simply excuses used to justify a conclusion inconsistent with that

reached in King.

     The majority finally concludes that the current statute serves

the State's needs, beyond the need for normal law enforcement. The

majority distinguishes the 1991 statute on the ground that the

current statute deletes the provision which expressly authorized

the use of test results in criminal proceedings. The King court

cited this provision as evidence that the search permitted under

the 1991 statute did not serve special needs, beyond the needs of

law enforcement, because "one of the stated purposes of the search

is to gather evidence for criminal prosecution." King, 153 Ill. 2d

at 462. The majority here finds that the legislature, by deleting

the provision expressly authorizing the use of search results in

criminal proceedings, has demonstrated that criminal prosecution is

incidental to the primary purpose of the statute. I disagree.

      The King court determined that, to the extent that the 1991

statute relied upon criminal sanctions to accomplish the State's

goal of deterring drunk driving and removing drunk drivers from the

road, the statute did not serve the state's interests beyond the

need for law enforcement. The majority opinion acknowledges, as it

must, that search results will routinely be used in criminal

proceedings. Moreover, a review of the legislative history reveals

that the current statute, like its predecessor, was intended to

secure evidence for use in criminal proceedings against intoxicated

motorists. To suggest that the deletion of the provision expressly

authorizing the use of search results in criminal proceedings

renders the statute constitutional simply exalts form over

substance. If King correctly declared the 1991 statute

unconstitutional, none of the distinctions raised in the majority

opinion between the 1991 statute and the current statute justify a

contrary finding here. The majority's analysis is consistent only

with the dissenting opinions in King. Because I continue to adhere

to King, I respectfully dissent.

     JUSTICES HARRISON and NICKELS join in this dissent.