(No. 79404.—

CHRISTOPHER J. FINK, Appellee, v. GEORGE RYAN, Secretary of State, Appellant.

*Opinion filed October 18, 1996.—Rehearing denied December 2, 1996.*

BILANDIC, C.J., joined by HARRISON and NICKELS, JJ., dissenting.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Daniel N. Malato, Assistant Attorney General, of Chicago, of counsel), for appellant.

Michael W. Feetterer, of Diamond, LeSueur, Roth & Feetterer, P.C., of McHenry, and Larry A. Davis, of Davis & Riebman, Ltd., of Des Plaines, for appellee.

JUSTICE MILLER delivered the opinion of the court:

This appeal results from a final order entered in the circuit court of Lake County finding a portion of the Illinois Vehicle Code (625 ILCS 5/11—501.6 (West 1994)) unconstitutional under the fourth amendment of the United States Constitution.

The portion of the Vehicle Code found unconstitutional provided that if a traffic accident occurred in which death or personal injury resulted and a driver involved in the accident had been issued a Uniform Traffic Ticket for a nonequipment offense, the driver would be subject to chemical testing to determine whether the person was impaired by drugs or alcohol. See 625 ILCS

5/11—501.6(a) (West 1994). Following the circuit court's ruling, the Secretary of State appealed directly to this court pursuant to Supreme Court Rule 302(a). 134 Ill. 2d R. 302(a). We reverse and remand.

## I. BACKGROUND

The circuit court found section 11—501.6 of the Illinois Vehicle Code unconstitutional. The statute provides:

"Any person who drives or is in actual control of a motor vehicle upon the public highways of this State and who has been involved in a personal injury or fatal motor vehicle accident, shall be deemed to have given consent to a breath test *** or to a chemical test or tests of blood, breath, or urine for the purpose of determining the alcohol or other drug content of such person's blood if arrested as evidenced by the issuance of a Uniform Traffic Ticket for any violation of the Illinois Vehicle Code or a similar provision of a local ordinance, with the exception of equipment violations contained in Chapter 12 of this Code, or similar provisions of local ordinances." 625 ILCS 5/11—1.6(a) (West 1994).

The statute further provides that a "personal injury shall include any type A injury." 625 ILCS 5/11—501.6(g) (West 1994). According to the statute, type A injuries "shall include severely bleeding wounds, distorted extremities, and injuries that require the injured party to be carried from the scene." 625 ILCS 5/11—501.6(g) (West 1994).

The circuit court's rationale in finding the statute unconstitutional was that the statute was "no different, substantively" than a predecessor statute (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.6) found unconstitutional by this court in *King v. Ryan*, 153 Ill. 2d 449 (1992). Because of the circuit court's reliance on *King*, a review of *King* is necessary.

This court in *King* held that the predecessor statute (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.6) violated

the fourth amendment of the United States Constitution and article I, section 6, of the Illinois Constitution of 1970. The court found that the "special needs" exception to the fourth amendment did not apply to the predecessor statute. *King*, 153 Ill. 2d at 462. The court therefore believed the predecessor statute's provision for chemical testing of a driver absent a warrant or probable cause determination was unconstitutional.

As expressed by the Supreme Court, the "special needs" exception to the fourth amendment states: "we have permitted exceptions [to the fourth amendment] when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " *Griffin v. Wisconsin*, 483 U.S. 868, 873-74, 97 L. Ed. 2d 709, 717, 107 S. Ct. 3164, 3168 (1987), quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351, 83 L. Ed. 2d 720, 741, 105 S. Ct. 733, 748 (1985) (Blackmun, J., concurring in judgment). The Supreme Court has found the warrant and probable cause requirement impracticable in a variety of circumstances. Some of these circumstances include: searches of government employees' desks and offices (*O'Connor v. Ortega*, 480 U.S. 709, 94 L. Ed. 2d 714, 107 S. Ct. 1492 (1987)); searches of certain types of student property by school officials (*T.L.O.*, 469 U.S. 325, 83 L. Ed. 2d 720, 105 S. Ct. 733); roadblock searches identifying drunk drivers (*Michigan Department of State Police v. Sitz*, 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481 (1990)); roadblock searches identifying illegal immigrants (*United States v. Martinez-Fuerte*, 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074 (1976)); chemical testing of railroad employees (*Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 103 L. Ed. 2d 639, 109 S. Ct. 1402 (1989)); and administrative searches of regulated businesses (*New York v. Burger*, 482 U.S. 691, 96 L. Ed. 2d 601, 107 S. Ct. 2636 (1987)).

The court in *King* noted that under the "special needs" exception, a search or seizure may be reasonable absent individualized suspicion in two types of cases: (1) when the intrusion upon the person to be searched is minor; or (2) when the person to be searched has a diminished expectation of privacy. *King*, 153 Ill. 2d at 458-59. The court concluded that the person to be tested under the predecessor statute in *King* fell into neither of these two categories.

In addition, the *King* court believed that under the Illinois Constitution's right of privacy (Ill. Const. 1970, art. I, § 6) a driver could not be subject to chemical testing when the driver had not been charged with an offense based upon probable cause. *King*, 153 Ill. 2d at 464-65. Accordingly, the court found that the statute violated the Illinois Constitution as well.

## II. THE PRESENT CASE

On the evening of December 18, 1994, Christopher J. Fink drove his car into a telephone pole. Fink's friend, Jeffrey Almeit, was a passenger in the car. Fink and Almeit exited the car and found their way to a nearby house. Paramedics and the police were called. When the police arrived, paramedics were immobilizing Fink and Almeit with cervical collars and back boards. The two were transported to a local hospital. Before proceeding to the hospital, police officers investigated the accident scene.

At the hospital, Fink was issued a traffic ticket for failure to reduce speed to avoid an accident. See 625 ILCS 5/11—601(a) (West 1994). An officer requested that Fink submit to a blood-alcohol content test and Fink was warned of the consequences if he refused—the suspension of his driver's license. See 625 ILCS 5/11—501.6(c), (d) (West 1994). Fink consented to a blood test and a nurse drew a blood sample. The sample revealed a blood-alcohol concentration of 0.14. Later that night, Fink was released from the hospital.

The State attempted to proceed against Fink in two ways. First, the State sent Fink notice that his driver's license was to be suspended for three months pursuant to sections 11—501.6 and 6—208.1 (625 ILCS 5/11—501.6, 6—208.1 (West 1994)). Second, Fink was charged with driving under the influence of alcohol (DUI). See 625 ILCS 5/11—501(a)(1) (West 1994). The DUI citation was premised upon the 0.14 blood-alcohol content test result obtained under section 11—501.6 (625 ILCS 5/11—501.6 (West 1994)).

Fink filed a civil complaint for declaratory judgment asking the circuit court to declare section 11—501.6 (625 ILCS 5/11—501.6 (West 1994)) unconstitutional on its face as a violation of the fourth amendment of the United States Constitution and article I, section 6, of the Illinois Constitution. In the federal constitutional claim, Fink argued that the statute allowed an unreasonable search of a driver without probable cause to believe that the driver was chemically impaired. In the state constitutional claim, Fink argued that chemical testing violated a driver's right to be free from unreasonable searches and that chemical testing invaded a driver's right of privacy.

The circuit court agreed with Fink, stating in its final order: "That because the chemical tests results can still be used in a criminal proceeding, the current version of Section 11—501.6 is no different, substantively, than the 1991 version of the Statute which was struck down as unconstitutional in the case of *King v. Ryan* ***." In addition, the circuit court stated "the 1994 version of 625 ILCS 5/11—501.6 is hereby declared unconstitutional in that it sanctions unreasonable searches and seizures in violation of the Fourth Amendment of the United States Constitution."

Because of the circuit court's ruling, Fink's driver's license was not suspended and the 0.14 blood-alcohol

content test result became inadmissible in the DUI prosecution. Without this evidence, the State moved to dismiss the DUI prosecution. The circuit court allowed the State's motion. The Secretary of State appealed directly to this court (134 Ill. 2d R. 302(a)) for review of the circuit court's holding that section 11—501.6 is unconstitutional.

## III. DISCUSSION

Because a statute is presumed to be constitutional (*People v. Miller*, 171 Ill. 2d 330, 333 (1996)), Fink "has the burden of clearly establishing [the statute's] constitutional infirmity." *People v. Hickman*, 163 Ill. 2d 250, 257 (1994). Given this court's ruling in *King*, we may assume the legislature enacted the changes found in section 11—501.6 to address the constitutional concerns expressed in that case. "Where statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law." *Hickman*, 163 Ill. 2d at 262.

The purpose of the amended statute, though not explicitly stated, may be found in its language and structure: to reduce the dangers posed by chemically impaired drivers by providing for the suspension of their licenses and by deterring others from engaging in similar misconduct. As *King* observed, "the State has a compelling interest in protecting its citizens from the hazards caused by intoxicated drivers." *King*, 153 Ill. 2d at 461. To the extent that a statute removes chemically impaired drivers from the road "without relying on criminal sanctions, it serves the State's interests beyond the need for normal law enforcement." *King*, 153 Ill. 2d at 461.

Illinois has a special need to suspend the licenses of chemically impaired drivers and to deter others from driving while chemically impaired. See *King*, 153 Ill. 2d at 461. This specialized need goes beyond the need for

normal law enforcement. Thus, a search may be reasonable absent individualized suspicion if a chemical test is nonintrusive or a driver's expectation of privacy has been reduced. See *King*, 153 Ill. 2d at 458-59.

### A. Constitutionality Under the Fourth Amendment of the United States Constitution

Presented with the problems caused by chemically impaired drivers in the state, the legislature enacted the statute later declared unconstitutional in *King*. In response to this court's holding in *King*, the legislature amended the statute by: (1) deleting the requirement that chemical testing be premised upon a driver's fault in causing an accident; (2) deleting the provision that chemical test results could be used in civil and criminal proceedings; (3) adding a requirement that chemical testing be premised upon the issuance of a Uniform Traffic Ticket for a non-equipment traffic offense; and (4) defining with more particularity the types of "personal injury" that trigger the chemical testing provision. Compare Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 11—501.6, with 625 ILCS 5/11—501.6 (West 1994).

The legislature did not alter two components in the statute. First, the legislature retained the implied-consent provision of the predecessor statute. Second, the legislature did not require an individualized suspicion of chemical impairment before subjecting a driver to chemical testing. Compare Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 11—501.6, with 625 ILCS 5/11—501.6 (West 1994).

We believe that the changes made by the legislature in response to *King* reduce the intrusiveness of chemical testing and allow for testing only in those situations in which a driver's expectation of privacy is diminished. Like the railroad industry in *Skinner*, 489 U.S. 602, 103 L. Ed. 2d 639, 109 S. Ct. 1402, and the junkyard business in *Burger*, 482 U.S. 691, 96 L. Ed. 2d 601, 107 S. Ct. 2636, the highways of Illinois are highly regulated. The

Vehicle Code comprises 404 pages in the Illinois Compiled Statutes (West 1994) covering a broad range of subjects from ambulances (625 ILCS 5/1—102.01 (West 1994)) to school zones (625 ILCS 5/11—605 (West 1994)).

Although a driver does not "lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation" (*Delaware v. Prouse*, 440 U.S. 648, 662, 59 L. Ed. 2d 660, 673, 99 S. Ct. 1391, 1400 (1979)), the regulation of automobiles in Illinois reduces a driver's expectation of privacy. While driving on the road, one reasonably expects less privacy than one expects within the confines of a residence. As the Supreme Court has noted in the context of border checkpoints, "one's expectation of privacy in an automobile and of freedom in its operation are significantly different from the traditional expectation of privacy and freedom in one's residence." *Martinez-Fuerte*, 428 U.S. at 561, 49 L. Ed. 2d at 1130, 96 S. Ct. at 3084-85.

Further, under the predecessor statute, personal injury included any injury requiring "immediate professional attention in either a doctor's office or a medical facility." Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.6(g). Under the amended statute, the legislature narrowed the spectrum of drivers subject to chemical testing. Under section 11—501.6(g), personal injuries "shall include any type A injury *** [which] *** shall include severely bleeding wounds, distorted extremities, and injuries that require the injured party to be carried from the scene." 625 ILCS 5/11—501.6(g) (West 1994). We believe that the legislature in amending the statute intended to limit the personal injury requirement of section 11—501.6 to type A injuries. We further believe that type A injuries are limited to those listed in section 11—501.6(g) (625 ILCS 5/11—501.6(g) (West 1994)).

Accidents involving a fatality still trigger the chemi-

cal testing provision. However, personal injury requiring only a visit to a doctor's office or a medical facility no longer can be the basis for testing. Thus, the legislature's more particularized definition of type A injuries subjects a driver to chemical testing in only the more serious accidents. No reasonable driver expects to leave the scene of a serious accident moments after its occurrence. With law enforcement personnel investigating the accident and other personnel attending to the participants' physical conditions, a driver expects less privacy.

In addition, any driver subject to chemical testing under the amended statute has a statutory duty to remain at the scene of the accident, render aid to injured parties, and exchange basic information with those involved. See 625 ILCS 5/11—401, 11—403 (West 1994). Given the amount of time required to attend to law enforcement and emergency medical needs, the addition of a chemical test is minimally intrusive. Thus, by the very nature of the circumstances in which drivers find themselves, the legislature has imposed testing only when a driver's expectation of privacy has been diminished and a test is minimally intrusive.

Finally, the amended statute premises chemical testing on an "arrest[ ] as evidenced by the issuance of a Uniform Traffic Ticket" for a nonequipment violation of the Vehicle Code. 625 ILCS 5/11—501.6(a) (West 1994). Drivers issued Uniform Traffic Tickets are released only after posting bail in the form of a current Illinois driver's license, a bond certificate, or cash. 155 Ill. 2d R. 526. In *Terry v. Ohio*, the Supreme Court noted that "[a]n arrest *** is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows." *Terry v. Ohio*, 392 U.S. 1, 26, 20 L. Ed. 2d 889, 909, 88 S. Ct. 1868, 1882 (1968). Because the movement of an ar-

rested driver is already subject to restrictions, the administering of a chemical test poses a minimal additional intrusion.

In sum, we believe that under the amended statute (625 ILCS 5/11—501.6 (West 1994)), a driver will be subject to chemical testing only in situations in which the intrusiveness of the search has been reduced and a driver's expectation of privacy has been diminished. The intrusion upon an arrested driver is minimal or nonexistent depending upon the length of time required by law enforcement personnel to process the accident scene and emergency medical personnel to attend to the injured parties. Additionally, a driver's expectation of privacy is diminished because a driver is operating a vehicle in a highly regulated environment.

Thus, we conclude the legislature has enacted a statute that falls within the "special needs" exception to the fourth amendment. The State of Illinois has a special need beyond the normal needs of law enforcement to determine whether drivers are chemically impaired and to suspend those drivers' licenses. Under the limitations contained in the amended statute, drivers are subject to chemical testing only when testing will be minimally intrusive and only after a driver's expectations of privacy have been further diminished by the factors set forth in the statute.

Fink argues, however, that the "special needs" exception to the warrant and probable cause requirement is inapplicable because the chemical test results may be used in a criminal proceeding. For several reasons, Fink's claim fails.

In support of his argument, Fink points to comments by the *King* court that the predecessor statute fell outside the "special needs" exception because "one of the stated purposes of the search is to gather evidence for criminal prosecution." *King*, 153 Ill. 2d at 462.

However, as noted elsewhere in *King* (153 Ill. 2d at 459-60), the Supreme Court has not yet determined whether evidence obtained under the "special needs" exception may be routinely used in criminal proceedings. See *Skinner*, 489 U.S. at 621 n.5, 103 L. Ed. 2d at 662 n.5, 109 S. Ct. at 1415 n.5. *King* recognized that "the Supreme Court has upheld searches under this special exception even though evidence obtained during the search was also used in a criminal trial." *King*, 153 Ill. 2d at 462. In those instances in which searches were upheld, "the evidence was found incidentally during a search which was constitutionally valid under the special needs exception." *King*, 153 Ill. 2d at 462. If the admission of chemical test results in a criminal proceeding is incidental to a statute's purpose, application of the "special needs" exception is not precluded.

Following *King*, the legislature chose to delete those provisions contained in the former statute that allowed the use of chemical test results in criminal proceedings. Compare Ill. Rev. Stat. 1991, ch. 95$^{1}$/$_{2}$, pars. 11—501.6(e), (f), with 625 ILCS 5/11—501.6(e), (f) (West 1994). As we have already noted, the purpose of the statute is to reduce the destruction caused by drunken drivers on Illinois highways. This goal can be accomplished through civil suspension proceedings of those who fail the test, as well as through the provisions suspending the licenses of persons who refuse to submit to chemical testing. By deleting any reference in the amended statute to the use of test results in criminal proceedings, the legislature has made clear that criminal prosecution is only incidental to the primary purpose of the statute. Because the use of test results in other proceedings is incidental to the amended statute's purpose, the "special needs" exception to the warrant and probable cause requirement remains applicable. *King*, 153 Ill. 2d at 462.

### B. Constitutionality Under Article I, Section 6, of the Illinois Constitution

In the proceedings below, Fink also argued that the amended statute violated article I, section 6, of the Illinois Constitution. The trial judge did not resolve this issue and instead based his decision solely on the fourth amendment. Fink renews his state constitutional argument here in support of the circuit court's judgment in his favor.

Article I, section 6, of the Illinois Constitution provides:

"The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means." Ill. Const. 1970, art. I, § 6.

This court has construed the search and seizure language found in section 6 in a manner that is consistent with the Supreme Court's fourth amendment jurisprudence. *People v. Mitchell*, 165 Ill. 2d 211, 219 (1995); *People v. Tisler*, 103 Ill. 2d 226, 245 (1984). Because the amended statute falls within the "special needs" exception to the fourth amendment, we believe that it also comports with the search and seizure provision of article I, section 6, of our state constitution.

The additional recognition in section 6 of a zone of personal privacy does not alter our analysis. As we have already determined, a driver has a reduced expectation of privacy in those circumstances in which the amended statute is applicable, for the driver has been involved in a serious accident while operating a vehicle in a highly regulated environment and, moreover, is under arrest, as evidenced by the receipt of a traffic ticket.

Contrary to Fink's argument, this court's earlier decision in *King* does not control the resolution of this question. The *King* court believed that the prior statute violated the privacy provision of the Illinois Constitu-

tion because drivers could be tested even though they had not been arrested and even though there was no probable cause to believe they had committed an of-' fense. *King*, 153 Ill. 2d at 464-65. Under the amended statute, however, no driver is chemically tested unless the person has been arrested, based on the existence of probable cause, for a nonequipment violation of the Vehicle Code. We thus believe that a driver's zone of privacy is not unconstitutionally invaded when a driver is chemically tested pursuant to section 11—501.6, and we therefore conclude the amended statute does not violate article I, section 6, of the Illinois Constitution.

## IV. CONCLUSION

For the foregoing reasons, we uphold the constitutionality of section 11—501.6 (625 ILCS 5/11—501.6 (West 1994)). The statute passes constitutional scrutiny under both the fourth amendment of the United States Constitution and article I, section 6, of the Illinois Constitution of 1970. Therefore, we reverse the circuit court's judgment. This cause is remanded to the circuit court of Lake County for further proceedings.

*Reversed and remanded.*

CHIEF JUSTICE BILANDIC, dissenting:

I am not persuaded by the majority's attempt to distinguish the instant statute from the 1991 version of the same statute that this court declared unconstitutional in *King v. Ryan*, 153 Ill. 2d 449 (1992). As the trial court determined, the current statute is "no different, substantively," from the 1991 statute. If *King* correctly declared the 1991 statute unconstitutional, then we should likewise hold that the current statute is unconstitutional. If, on the other hand, the court now wishes to reconsider and reject the majority opinion in *King*, it should do so expressly.

Instead, the majority makes a disingenuous and un-

persuasive attempt to reconcile its decision with *King*. The majority claims that the current statute is different in several respects from its predecessor, and that these differences support a conclusion that the current statute is constitutional. The purported distinctions, however, are illusory and do not justify or permit a conclusion different from that reached in *King*.

The current statute, like its predecessor, essentially provides that drivers give implied consent to the chemical testing of their breath, blood or urine to determine its blood-alcohol or drug content whenever a police officer determines that the driver has been in an accident that resulted in death or personal injury and that the driver committed a traffic violation. Neither statute required any individualized suspicion that the driver was under the influence of alcohol or drugs. The only differences between the two statutes are that (1) the current statute defines "personal injury" slightly differently than the 1991 statute; (2) under the current statute, the police officer must give the driver involved in the accident a traffic ticket, while the former statute required the officer to determine that the affected driver was "at fault" in causing the accident; and (3) the current statute, unlike the 1991 version, does not *expressly state* that the test results may be used in criminal proceedings, but permits the use of test results in such proceedings.

In *King* this court declared the 1991 statute unconstitutional, in part, because it violated the fourth amendment of the United States Constitution. The court found that the provision that authorized chemical testing of a driver without a warrant or probable cause was unconstitutional. The *King* court concluded that the "special needs" exception to the fourth amendment's warrant requirement did not apply to the statute. *King*, 153 Ill. 2d at 462.

Despite the obvious similarity between the current statute and the 1991 version found unconstitutional in *King*, the majority nevertheless finds that the current statute does not violate the fourth amendment. In reaching this conclusion, the majority opinion, like the *King* opinion, considers the "special needs" test. Unlike *King*, however, the majority finds that the current statute satisfies all of the requirements of that test.

The majority first notes that the regulation of highways and automobiles reduces a driver's expectation of privacy. The majority acknowledges that the *King* opinion found that such regulation is insufficient to excuse the warrant requirement. The majority "distinguishes" *King*, however, on the basis of a supposedly "narrower" definition of "personal injury" in the current statute. In fact, the definition of "personal injury" under the current statute is no narrower than under its predecessor. Both statutes governed only those drivers involved in serious automobile accidents. The majority here, unlike the *King* majority, simply concludes that drivers involved in serious accidents have a diminished expectation of privacy that justifies a warrantless search. I continue to agree with the *King* court's conclusion that such drivers do not necessarily have a diminished expectation of privacy that justifies subjecting them to a warrantless search without any requirement of individualized suspicion.

The majority here also finds that the search authorized under the current statute is "minimally intrusive" and thus satisfies the second prong of the "special needs" test. In reaching this conclusion, the majority notes that the driver subjected to the search is already required to remain at the scene of a serious accident while medical assistance is rendered to injured persons. The opinion also notes that the search is permitted only when the driver is "arrested as evidenced by the issuance of a Uniform Traffic Ticket."

The majority fails to adequately explain why these two factors alter the *King* court's conclusion that the warrantless search at issue is *not* minimally intrusive. *King* concluded that a warrantless search to determine the blood-alcohol content of a person's breath, blood or urine is intrusive and that the 1991 statute authorizing such a search therefore did not satisfy the second prong of the "special needs" test. *King,* 153 Ill. 2d at 462-63. At the time the *King* court declared the 1991 statute unconstitutional, drivers were also required to remain at the scene of a serious accident. See Ill. Rev. Stat. 1991, ch. 95¹/₂, par. 11—403. The *King* court nevertheless found that the warrantless search at issue was an "intrusive" search. *King,* 153 Ill. 2d at 462-63. Similarly, *King* found the search intrusive even though the police officer conducting the search was first required to conclude that the driver was partially "at fault" in causing the accident. I fail to see why a different conclusion is permissible here simply because the officer must now issue a written traffic ticket. The current statute is arguably even more intrusive than its predecessor, which required a police officer to determine that there was some link between the motorist's driving and the accident. Under the current statute, no such causal link is required. If a motorist is charged with *any* offense under the motor vehicle code (with the exception of an equipment violation), then that person is susceptible to a search regardless of whether the motorist is responsible for the accident. The purported "distinctions" cited in the majority opinion between the current statute and the statute declared unconstitutional in *King* are not substantive differences, but simply excuses used to justify a conclusion inconsistent with that reached in *King.*

The majority finally concludes that the current statute serves the State's needs, beyond the need for normal

law enforcement. The majority distinguishes the 1991 statute on the ground that the current statute deletes the provision which *expressly authorized* the use of test results in criminal proceedings. The *King* court cited this provision as evidence that the search permitted under the 1991 statute did not serve special needs, *beyond the needs of law enforcement,* because "one of the stated purposes of the search is to gather evidence for criminal prosecution." *King,* 153 Ill. 2d at 462. The majority here finds that the legislature, by deleting the provision expressly authorizing the use of search results in criminal proceedings, has demonstrated that criminal prosecution is incidental to the primary purpose of the statute. I disagree.

The *King* court determined that, to the extent that the 1991 statute relied upon *criminal sanctions* to accomplish the state's goal of deterring drunk driving and removing drunk drivers from the road, the statute did not serve the state's interests beyond the need for law enforcement. The majority opinion acknowledges, as it must, that search results will routinely be used in criminal proceedings. Moreover, a review of the legislative history reveals that the current statute, like its predecessor, was intended to secure evidence for use in criminal proceedings against intoxicated motorists. To suggest that the deletion of the provision expressly authorizing the use of search results in criminal proceedings renders the statute constitutional simply exalts form over substance. If *King* correctly declared the 1991 statute unconstitutional, none of the distinctions raised in the majority opinion between the 1991 statute and the current statute justify a contrary finding here. The majority's analysis is consistent only with the dissenting opinions in *King.* Because I continue to adhere to *King,* I respectfully dissent.

JUSTICES HARRISON and NICKELS join in this dissent.