NOTICE

Decision filed 03/30/11. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-09-0631

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| JOSHUA ANDREW ODOM, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 09-MR-2 |
| | ) | |
| JESSE WHITE, Illinois Secretary of State, | ) | Honorable |
| | ) | Joe Harrison, |
| Defendant-Appellee. | ) | Judge, presiding. |

NO. 5-10-0139

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| JASON H. JANES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 09-MR-27 |
| | ) | |
| JESSE WHITE, Illinois Secretary of State, | ) | Honorable |
| | ) | Terry H. Gamber, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court, with opinion.
Presiding Justice Chapman and Justice Donovan concurred in the judgment and opinion.

**O P I N I O N**

These cases, consolidated in this court for oral argument and decision only, come

before us on administrative review from the circuit court of Jefferson County, which

1

affirmed the decisions of the Illinois Secretary of State (the Secretary) to deny the appellants' petitions to rescind the suspensions of their driving privileges pursuant to section 6-206(a)(31) of the Illinois Vehicle Code (the Code) (625 ILCS 5/6-206(a)(31) (West 2008)). Both appellants had been drivers of motor vehicles that were involved in motor vehicle accidents involving personal injuries to individuals who were transported from the scene in ambulances. At all the stages of the proceedings, the appellants have argued only that the motor vehicle accidents did not involve the types of personal injuries enumerated in the statute as conferring their implied consent to blood-alcohol tests.

Some discussion of the statutory scheme may be helpful to further the discussion of the facts and the law. Section 6-206(a)(31) of the Code gives the Secretary discretionary authority to suspend or revoke the driving privileges of any person upon sufficient evidence that the person has refused to submit to a blood-alcohol test as required by section 11-501.6 of the Code (625 ILCS 5/11-501.6 (West 2008)) or has submitted to a test resulting in an alcohol concentration of 0.08 or more. 625 ILCS 5/6-206(a)(31) (West 2008).

Section 11-501.6(a) of the Code provides that any person who drives or is in actual control of a motor vehicle upon the public highways and who has been involved in an accident resulting in personal injury or death for which he has been arrested for a nonequipment violation, as evidenced by the issuance of a traffic ticket, shall be deemed to have given consent for a blood-alcohol test. 625 ILCS 5/11-501.6(a) (West 2008). For purposes of this section, a personal injury is defined as follows:

> "includ[ing] any type A injury as indicated on the traffic accident report completed by a law enforcement officer that requires immediate professional attention in either a doctor's office or a medical facility. A type A injury shall include severely bleeding wounds, distorted extremities, and injuries that require the injured party to be carried from the scene." 625 ILCS 5/11-501.6(g) (West 2008).

2

Although this paragraph of the statute speaks in terms of inclusion, the supreme court has held that type A injuries are limited to those listed in the paragraph: severely bleeding wounds, distorted extremities, or injuries that require the injured party to be carried from the scene. *Fink v. Ryan*, 174 Ill. 2d 302, 310 (1996). Personal injuries requiring only a visit to a doctor's office or a medical facility, without severe bleeding, distorted extremities, or the need for the injured party to be carried from the scene, do not qualify as type A injuries. This ensures that only drivers involved in more serious accidents, in which the expectation of privacy is diminished and the administration of the blood-alcohol test is minimally intrusive, are subjected to testing. *Fink*, 174 Ill. 2d at 311. Because the statute does not require that the law enforcement officer have any suspicion or cause to believe that the driver is intoxicated or under the influence of alcohol prior to asking him to submit to testing, its application must be so limited only to motor vehicle accidents of a more serious nature. *Fink*, 174 Ill. 2d at 309-12.

A person may contest the suspension of his driving privileges by requesting an administrative hearing with the Secretary in accordance with section 2-118 of the Code (625 ILCS 5/2-118 (West 2008)), at the conclusion of which the Secretary may rescind, continue, or modify the order of suspension. 625 ILCS 5/11-501.6(e) (West 2008). The action of the Secretary is subject to judicial review in the circuit court and thereafter in accordance with the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2008)). 625 ILCS 5/2-118(e) (West 2008).

In both the cases before us, the appellant drivers were asked to and did submit to blood-alcohol tests. Both tests revealed an alcohol concentration of 0.08 or more. Accordingly, their driving privileges were suspended. Each driver contested the suspension by requesting a hearing before the Secretary, and in each case the Secretary upheld the suspension. Both drivers sought administrative review in the circuit court of Jefferson

3

County, and in each case the circuit court affirmed the decision of the Secretary. The drivers now appeal to this court.

As always on administrative review, we review the decision of the Secretary and not the decision of the circuit court, because the Secretary is the fact finder responsible for overseeing testimony, making credibility determinations, and assigning weight to statements made by witnesses. *Emergency Treatment, S.C. v. Department of Employment Security*, 394 Ill. App. 3d 893, 901 (2009). Factual determinations by the Secretary are deemed to be *prima facie* true and correct and will stand unless contrary to the manifest weight of the evidence. *Emergency Treatment, S.C.*, 394 Ill. App. 3d at 901. Questions of law are subject to *de novo* review. *Emergency Treatment, S.C.*, 394 Ill. App. 3d at 901. The question whether the Secretary correctly considered all the facts and correctly applied the law to those facts is a mixed question of fact and law, and the Secretary's decision will be overturned only if clearly erroneous. *Emergency Treatment, S.C.*, 394 Ill. App. 3d at 901.

The proceedings before the Secretary reveal the following facts. Appellant Joshua A. Odom was involved in a single-vehicle accident May 11, 2008. He crested a hill too fast and lost control of his vehicle, which became airborne and rolled several times. The car came to rest against an embankment, which made it impossible for him to open the driver-side door. His OnStar system alerted authorities and dispatched an ambulance. Odom repeatedly told responding personnel that he was fine and was not injured. Responders told him not to attempt to exit the vehicle until ambulance personnel arrived, in case he was injured. Ambulance personnel removed him from the vehicle and placed him on a gurney. Odom did not remember that any ambulance personnel had asked him if he was injured or if he needed assistance. One of the ambulance personnel wrote in his report that Odom denied any pain or injuries. Odom was not asked if he wanted or needed to go to the hospital in the ambulance. Odom did not know that he could refuse, but he told everyone that he was fine.

4

Had he been given a choice, he would not have gone in the ambulance. Odom's only injury was a minor laceration on his head from a piece of glass. Hospital personnel simply cleaned it up. He was given a CAT scan to check for head injuries, which was negative. He was released from the hospital that night and felt fine the next day. He did not need to take the muscle relaxants he had been sent home with. Odom denied that he had any severely bleeding wounds, any distorted extremities, or any injuries that required he be carried from the scene.

Deputy Donald Wesley Harbison testified that he responded to the accident scene. Harbison testified that Odom told him he was okay but that he was "humped over" and could not get out of the car. It appeared to Harbison that Odom was "pushed forward" and physically could not get over the passenger seat to get out of the car. Harbison did not observe any injuries to Odom other than blood from a superficial cut, but he testified that he was moaning and groaning when ambulance personnel started to move him. Harbison was not aware of any severely bleeding wounds or distorted extremities on Odom. Harbison believed that Odom's injuries did require him to be carried from the scene because when the ambulance personnel put the cervical collar on him, Odom was moaning and groaning and he never told them he was not injured. This moaning increased at the hospital. Harbison testified that on the traffic accident report he indicated that Odom had an incapacitating injury; the actual report shows a type B injury, which is a nonincapacitating injury. Based on his observations, it was Harbison's opinion that Odom's injuries required that he be carried from the scene in an ambulance. Harbison stated that based on the way Odom was sitting in the vehicle and acting, he would not have been able to walk away from the accident and be okay.

Odom testified that he does not remember moaning or groaning at the scene of the accident or in the ambulance. He testified that he might have moaned at the hospital when

5

blood was being drawn because he does not like that procedure. The report of the ambulance personnel did not report any moaning or groaning, nor did hospital records. Odom was only at the hospital for about one hour, and he walked out under his own power and went to work the next day.

The traffic accident report submitted by Deputy Harbison indicates a type B injury. Harbison's narrative report indicates that upon his arrival at the scene, Odom told him that he was not injured but could not get out of the vehicle. It further indicated that Odom was transported to the hospital via ambulance.

The Secretary denied Odom's petition to rescind his suspension, holding, "The fact that [Odom] was carried from the scene by ambulance to a local hospital at the discretion of ambulance personnel is sufficient evidence for a reasonable police officer to conclude that a Type A injury was sustained."

Appellant Jason H. Janes was driving a motor vehicle that was involved in an accident on August 30, 2007, in which his passenger was injured. According to Janes, the passenger only had a small cut above his right eye. Nevertheless, he was taken by ambulance from the scene to the hospital. The passenger was not given any choice whether to go in the ambulance; he was told he was going. Janes could remember his passenger stating that he did not want to go in the ambulance but that he was told he must. The passenger stated that he was okay and did not need or want to go in the ambulance, but he was forced to go. The passenger was released from the hospital that night with only a bandage. Janes did not see any severely bleeding wounds or distorted extremities on his passenger, who was able to walk. The passenger did not appear to have any injuries that would have prevented him from continuing his normal activities.

Sheriff's deputy Jeff Moore testified that he responded to the accident in which the passenger had been injured. Moore did not know the extent of the injuries suffered. He

6

could not tell if the passenger had any severely bleeding wounds or any distorted extremities. Moore did not know of any other injuries. The ambulance was already on the scene when Moore arrived. Moore simply saw the passenger on a stretcher being loaded into the ambulance. Moore completed the traffic accident report and admitted that it did not indicate any injuries as a result of the accident, much less a type A injury. Moore also admitted that the report did not even contain the correct name of the passenger. He stated that these were his mistakes. Moore did observe the passenger on a stretcher being loaded into an ambulance.

Sheriff's deputy James Webb testified that he also responded to the scene of the accident. He observed the passenger lying on an ambulance cot receiving treatment. He was transported from the scene in the ambulance. Webb completed a narrative supplement to the traffic accident report completed by Moore. Both he and Moore testified that this was a part of the official traffic accident report. In his narrative report, Webb indicated that the passenger was injured and was carried from the scene in an ambulance. The report did not refer to the injury as a type A injury or an incapacitating injury. Webb was not aware of any severely bleeding wounds or any distorted extremities on the passenger. Webb did not see the passenger object to going in the ambulance.

The traffic accident report form prepared by Deputy Moore indicates no injuries. The narrative portion of the report prepared by Deputy Webb states only that the passenger was on an ambulance cot when Webb arrived and was later transported to the hospital. It says nothing about the passenger's injuries.

The Secretary denied Janes's petition to rescind the suspension of his driving privileges, holding that the fact that the passenger was carried from the scene by ambulance fulfills the statutory requirement of a type A injury. According to the Secretary, that the passenger was carried from the scene by an ambulance is indicated in the narrative

7

supplement to the traffic accident report, and this is sufficient even if the appropriate box is not marked on the form portion of the report.

On appeal, we must first determine the appropriate standard of review. The historical facts of the cases are essentially undisputed, as set forth above. Neither party argues that the Secretary's findings of fact are contrary to the manifest weight of the evidence. The parties dispute only whether these facts establish the existence of type A injuries within the definition of the statute.

We conclude that the Secretary's decisions are ones involving a mixed question of law and fact, and our standard of review is to determine whether the decisions are clearly erroneous. A mixed question of law and fact is one involving an examination of the legal effect of a given set of facts. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391 (2001). Stated another way, a mixed question is one in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard or whether the rule of law as applied to the established facts is or is not violated. *AFM Messenger Service, Inc.*, 198 Ill. 2d at 391. The Secretary examined the facts to decide whether those facts established injuries that met the statutory definition of a type A injury sufficient to confer implied consent for a blood-alcohol test. Our standard of review for this decision is whether it is clearly erroneous. A decision is clearly erroneous only when the reviewing court, on the entire record, is left with the definite and firm conviction that a mistake has been committed. *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395.

We reverse the decisions of the Secretary because the Secretary's findings that the mere fact that an injured party was carried from the scene by ambulance is sufficient to establish a type A injury are clearly erroneous. The plain language of the statute requires not only that the injured party be carried from the scene but that they have injuries which *require*

8

that they be carried from the scene. The Secretary's decisions completely ignore and obviate this key element of the statutory definition.

In the instant cases, the law enforcement officers involved admitted that they had no knowledge concerning the injuries of the individuals carried away by ambulance. Although they did not see any severely bleeding wounds or any distorted extremities, they had no knowledge of whether or not the individuals had other injuries which *required* that they be carried from the scene by ambulance. The evidence in the records with respect to their injuries does not indicate that they had injuries which required that they be carried from the scene by ambulance. Indeed, the evidence in the records indicates the contrary. The law enforcement officers simply knew that the injured persons were carried away by ambulance. By finding that this was sufficient to establish a type A injury within the definition of the statute, the Secretary ignored a key element of that definition: that the person have injuries that *require* that they be carried from the scene. The Secretary cannot simply and willfully ignore a key element of the statutory definition of the type of injury required to confer implied consent to a blood-alcohol test.

In *Fink*, 174 Ill. 2d at 311, this implied-consent statute was held constitutional because it was narrowly drawn to apply only to drivers involved in more serious accidents, in which the expectation of privacy is diminished and the administration of the blood-alcohol test is minimally intrusive. By his rulings in the case at bar, the Secretary has expanded the statute to include accidents which may be of a less serious nature, where the injuries are not so severe that they *require* that a person be carried from the scene by ambulance, but where a person is carried from the scene by ambulance regardless of the severity of the injuries. That expansion of the statute is contrary to the holding of *Fink* and contrary to the plain language of the statute. Indeed, that expansion of the implied-consent statute to accidents of a less serious nature may render its application unconstitutional. See *Fink*, 174 Ill. 2d at 309-12.

9

We are left with the definite and firm conviction that, in so holding, the Secretary has committed a mistake. See *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395.

Where the evidence is insufficient to establish that the appellant drivers were involved in motor vehicle accidents which resulted in death or personal injuries within the meaning of the statute, they should not have been subjected to blood-alcohol tests and their driving privileges should not have been suspended. Accordingly, we reverse the decisions of the Secretary in the cases at bar and the decisions of the circuit court of Jefferson County that affirmed those decisions.

Reversed.

NO. 5-09-0631

IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

| | | |
|---|---|---|
| JOSHUA ANDREW ODOM, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 09-MR-2 |
| | ) | |
| JESSE WHITE, Illinois Secretary of State, | ) | Honorable |
| | ) | Joe Harrison, |
| Defendant-Appellee. | ) | Judge, presiding. |

NO. 5-10-0139

IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

| | | |
|---|---|---|
| JASON H. JANES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 09-MR-27 |
| | ) | |
| JESSE WHITE, Illinois Secretary of State, | ) | Honorable |
| | ) | Terry H. Gamber, |
| Defendant-Appellee. | ) | Judge, presiding. |

**Opinion Filed**:        March 30, 2011

**Justices**:        Honorable Thomas M. Welch, J.

Honorable Melissa A. Chapman, P.J., and
Honorable James K. Donovan, J.,
Concur

**Attorney**        J. Israel Slone
**for**        P.O. Box 306
**Appellants**        O'Fallon, IL 62269

**Attorneys**        Lisa Madigan, Attorney General, State of Illinois, Michael A. Scodro,
**for**        Solicitor General, Janon E. Fabiano, Assistant Attorney General, 100 West
**Appellee**        Randolph Street, 12th Floor, Chicago, IL 60601