**STATE of Maine**

v.

**Scott D. BENTO.**

Supreme Judicial Court of Maine.

Argued Nov. 12, 1991.

Decided Dec. 26, 1991.

---

Michael E. Carpenter, Atty. Gen., Wayne S. Moss (orally), Asst. Atty. Gen., Augusta, for the State.

Mary Lou Ciolfi (orally), Loyd, Bumgardner & Ciolfi, Brunswick, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

ROBERTS, Justice.

Defendant Scott D. Bento challenges an order of the Superior Court (Hancock County, *Beaulieu, J.*) denying his motion to suppress a blood-alcohol breath test. After the denial of his motion, Bento entered conditional guilty pleas (*Smith, J.*) pursuant to M.R.Crim.P. 11(a)(2), to aggravated OUI, 29 M.R.S.A. § 1312–B (1978 & Supp. 1989), and reckless conduct with the use of a dangerous weapon, 17–A M.R.S.A. § 211 (1983).[1] Because the court, when determining whether probable cause existed to justify the breath test, made inconsistent and irreconcilable findings, we vacate the judgment and remand for further proceedings.

In August 1989, Bento was involved in a two-vehicle accident in Bar Harbor. Heather Billman, a passenger in Bento's car, was killed in the accident. After the accident, Chief Daniel C. Herrick of the Bar Harbor Police Department met both drivers in the waiting area of Mt. Desert Hospital's emergency room, read them the Implied Consent Warning pursuant to 29 M.R.S.A. § 1312 (1978 & Supp.1989), and administered a breath test to Bento and the other driver.

Bento filed a motion to suppress the results of the breath test on the ground that this evidence was obtained in violation of the fourth amendment. Following an evidentiary hearing, the court ruled that under section 1312(11)(D),[2] in order for the

---

1. In addition to the counts included in the conditional guilty plea, the defendant was indicted for manslaughter, 17–A M.R.S.A. § 203 (1983 & Supp.1989), aggravated assault, 17–A M.R.S.A. § 208 (1983), and additional counts of reckless conduct with the use of a dangerous weapon, 17–A M.R.S.A. § 211 (1983).

2. At the time of the accident, section 1312(11)(D) stated, in pertinent part:

D. Notwithstanding any other provision of this section, each operator of a motor vehicle involved in a motor vehicle accident which results in the death of any person shall submit to and complete a test to determine that person's blood-alcohol level by analysis of such blood or breath.... The result of a test taken pursuant to this paragraph is not admissible at trial unless the court is satisfied that probable cause exists, independent of such test result, to believe that the operator was under the influence of intoxicating liquor or drugs or had excessive blood-alcohol level.

test result to be admissible, probable cause to believe that Bento was under the influence must have existed at the time the breath test was conducted. The court then found that no such probable cause existed. Nonetheless, the court denied the motion to suppress, holding the test results admissible because, under the fourth amendment's "exigent circumstances" exception, probable cause did exist to believe that the search would reveal evidence of a crime, namely evidence to support the charge of manslaughter.

### I.

■ The court interpreted section 1312(11)(D) as requiring that, in order for the blood-alcohol test results to be admitted into evidence, probable cause must have existed before the test was taken. We reject the court's interpretation. We conclude that the *statute* does not require that probable cause exist prior to a driver's submitting to the test.

■ Statutory application must be consistent with the legislative intent as divined from the language of the statute. *See State v. Edward C.,* 531 A.2d 672 (Me. 1987); *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.,* 513 A.2d 283 (Me.1986). In this case, cognizant that the Legislature has established a firm general policy favoring the admission of blood-alcohol tests, *see State v. Baker,* 502 A.2d 489, 494 (Me.1985); *State v. Adams,* 457 A.2d 416, 419 (Me.1983), we hold that the Legislature intended that test results obtained pursuant to section 1312(11)(D) be admissible if probable cause could be established at trial by any information discovered up to the time admission was sought.

First, we observe that the Legislature did not intend to treat an operator involved in a motor vehicle fatality in the same fashion as an operator involved in a routine OUI stop. *Compare* 29 M.R.S.A. § 1312(1)–(3) & (12) (probable cause of OUI must exist to conduct a blood-alcohol test; admission of the test results dependent on informing driver of consequences of failing

to comply) *with* 29 M.R.S.A. § 1312(8) & (11) (motor vehicle accident involving death, by itself, sufficient to conduct a blood-alcohol test; moreover, admission of the test does not depend upon giving the warnings of the consequences of refusing the test). Second, section 1312(11)(D) provides that:

> [t]he result of a test taken pursuant to this paragraph is not admissible at trial unless the court is satisfied that probable cause *exists,* independent of such test result, to believe that the operator was under the influence of intoxicating liquor or drugs or had excessive blood-alcohol level.

29 M.R.S.A. § 1312(11)(D) (emphasis added). This provision describes the court's responsibility when admission of the test results is sought *at trial.* The court must ascertain that probable cause then *exists.* The statute does not require, by its terms, that the court determine whether probable cause *existed* at some prior time (i.e., at the time of arrest or the time the test was conducted). Given these two factors, we hold that the court's interpretation of section 1312(11)(D) was error.

### II.

■ The misinterpretation of the statute does not end the matter, however, because of an inconsistency in the court's findings i) that no probable cause existed to believe that the defendant was operating while under the influence, and ii) that probable cause did exist to believe that the search would produce evidence tending to establish the commission of the crimes charged. Because these findings are irreconcilable, we remand for reconsideration consistent with our interpretation of section 1312(11)(D).

■ As we previously have observed, a defendant is guilty of operating under the influence if "his mental or physical faculties are impaired 'however slightly,' i.e., 'to any extent.'" *State v. Longley,* 483 A.2d 725, 732 (Me.1984) (quoting *State v. Bean,* 430 A.2d 1109, 1110–11 (Me.1981)). Under this standard, probable cause to believe a defendant was operating under the

(Section 1312(11)(D) has since been amended    by P.L.1989, ch. 740.)

influence exists if there is reason to believe that his mental or physical faculties are impaired by the consumption of alcohol. The court found that Chief Herrick failed to meet this standard because he "lacked sufficient evidence to believe [the] defendant was under the influence of intoxicating liquor." The court then found that Herrick did have probable cause to believe the search would lead to the discovery of incriminating evidence. Because only discovery of sufficient blood-alcohol content to render Bento impaired would constitute evidence relevant to the commission of the crime of manslaughter, the court's findings are mutually exclusive.

█ Although we will not reverse the court's findings concerning whether probable cause exists unless it is clearly erroneous, *see State v. Cyr*, 501 A.2d 1303, 1305 (Me.1985), one of the court's findings in this case must be erroneous. In the exercise of our appellate function, however, we do not resolve these factual questions. We remand, therefore, to the Superior Court to reconcile its findings in light of the corrected interpretation of section 1312(11)(D).

### III.

We are asked by the State to go further than to determine the meaning of the statutory requirement of probable cause. The State argues that *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), dispenses with a need for any level of individualized suspicion under the fourth amendment and that, consequently, we should uphold the constitutionality of the statute. We explicitly decline to address the constitutional issue for two reasons. First, the State's argument based on *Skinner* is raised for the first time on appeal. Second, the trial court must resolve the inconsistent factual findings before we can determine whether the constitutional issue is squarely presented. Of course, depending on the court's findings, both parties will be free on remand to put forward their constitutional arguments.

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.