STATE of Maine

v.

Wayne ROCHE.

Supreme Judicial Court of Maine.

Argued June 10, 1996.

Decided Aug. 20, 1996.

Norman R. Croteau, District Attorney, Margot Joly (orally), Assistant District Attorney, Farmington, for the State.

John Alsop (orally), Alsop & Mohlar, Norridgewock, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, and LIPEZ, JJ.

WATHEN, Chief Justice.

Defendant, Wayne Roche, appeals from the judgment entered in the Superior Court (Franklin County, *Chandler, J.*) following a jury trial that resulted in a verdict of not guilty on one count of manslaughter and guilty on one count of operating under the influence ("OUI") in violation of 29 M.R.S.A. § 1312 (1992).[1] The jury considered as part of the evidence relating to the OUI charge the result of a mandatory blood-alcohol test administered pursuant to 29 M.R.S.A. § 1312 in any accident in which a death has occurred or will occur. On appeal defendant challenges the constitutionality of the statute because it mandates testing without probable cause to believe the vehicle operator has been driving while impaired. Defendant also contends that the court erred in finding that probable cause existed independent of the blood test result to believe that he had oper-

---

1. 29 M.R.S.A. § 1312 has been replaced by 29–A M.R.S.A. § 2411 (1996), which states, in part, that a person commits OUI if that person operates a motor vehicle "while under the influence of intoxicants."

The text of 29 M.R.S.A. § 1312(11)(D) as it appeared in 1993, which is the subsection at issue in this case, provided in pertinent part:

Notwithstanding any other provision of this section, each operator of a motor vehicle involved in a motor vehicle accident shall submit to and complete a chemical test to determine that person's blood-alcohol level or drug concentration by analysis of the person's blood, breath, or urine *if there is probable cause to believe that a death has occurred or will occur as a result of the accident.* . . . The result of a test taken pursuant to this paragraph is admissible at trial if the court, after reviewing all the evidence regardless of whether the evidence was gathered *prior to, during, or after the administration of the test, is satisfied that probable cause exists, independent of the test result, to believe that the operator was under the influence of intoxication of liquor or drugs or had an excessive blood alcohol level.*

29 M.R.S.A. § 1312(11)(D) (emphasis added).

29 M.R.S.A. § 1312 has been repealed and replaced by 29–A M.R.S.A. § 2522 (1996).

ated his vehicle under the influence. Finally he contends that the court erred in admitting the blood test evidence without expert testimony to support its admission. We affirm the judgment.

The facts giving rise to this case may be summarized as follows. Wayne Roche was employed as a professional truck driver. In March 1993 he was hauling logs in his tractor trailer north of Eustis when he came upon a Maine Department of Transportation ("DOT") work site where four workers were steaming a frozen culvert. One lane only was open where the work site was located, and there were two signs placed on the road north of the site to warn oncoming traffic of the position of the workers. A flagman stood on either end of the site. The flagmen used signs, which read "stop" on one side and "slow" on the other, to direct the traffic through the single lane. The third man was inside the steamer truck in the middle of the work site and the fourth man was working in the ditch with the steamer hose. The work site was at the bottom of a hill.

Defendant slowed his truck as he approached the work site, but he did not obey the flagman's signal to stop. He moved into the open lane of travel and proceeded southbound through the work site. At the same time a northbound truck was traveling through the single lane in the direction of the flagman. Defendant tried to avoid colliding with the truck by swerving to the right and reentering the single lane of travel. As he attempted the maneuver he realized that there were more cars traveling behind the truck and he was forced to pull off to the right again. He brought his truck to a halt on the right shoulder of the road and the truck slowly rolled over, spilling the logs it had carried. Lloyd Sweetser, who had been working in the ditch with the steamer hose, tried to run away but was crushed by the contents of the truck and died.

Defendant was taken to a local hospital for examination and treatment for minor injuries. At the hospital a blood test was ordered by an officer of the Farmington Police Department. The officer brought the blood test kit to the hospital at the request of the Franklin County Sheriff's office, which had informed him that the accident involved a fatality and that therefore defendant was required to be tested.

A few weeks after the accident a state trooper, who investigated the accident scene and interviewed defendant on the day following the accident, went to defendant's home and questioned him about his use of alcohol. Defendant stated that he drank about a fifth of whiskey on the night before the accident. These statements were considered by the court in its determination of probable cause independent of the blood test result pursuant to 29 M.R.S.A. § 1312 and were offered as admissions in the State's case.

Defendant was indicted on one count of manslaughter and one count of operating under the influence. He pleaded not guilty to both charges. His motion to suppress the blood test results was denied. The matter proceeded to trial and the jury returned a verdict of not guilty on the manslaughter count and guilty on the operating under the influence count. The court sentenced defendant to a 60 day jail term.

Defendant contends that although the State fully complied with the statutory requirements of section 1312 the statute itself "abrogates the requirements of the Fourth Amendment." The premise of defendant's argument is that a warrantless search is permissible only when a recognized exception to the warrant requirement is present, for example a search conducted on the basis of exigent circumstances and probable cause. He concedes that exigent circumstances exist in virtually every blood-alcohol testing situation, but he maintains that probable cause must exist simultaneously in order to administer the test.

Defendant cites as support for his argument *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), which unquestionably establishes that a blood test is a search within the meaning of the Fourth Amendment. *Schmerber* considered the constitutionality of a blood test conducted incident to a lawful arrest. And were *Schmerber* the only case bearing on the constitutionality of a blood test conducted without a

warrant we would have to hold the statute unconstitutional.

*Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), however, resolves any doubt that a blood test in certain limited circumstances may be conducted on less than probable cause and, indeed, on less than individualized suspicion. The justification for such a search is popularly known as the "special needs" exception to probable cause. The State contends that *Skinner* picks up where *Schmerber* left off on the question of justification for a governmentally compelled test to determine the presence of intoxicants in the blood. We agree.

In *Skinner* the Federal Railroad Administration promulgated regulations that required certain employees to be tested for the presence of drugs or alcohol following certain major train accidents (e.g., accidents involving a fatality or property damage in excess of $.5 million). Railway labor organizations filed suit to enjoin the regulations.

The Supreme Court held that the tests were reasonable even though there was no reasonable suspicion that any particular employee was impaired. The Court stated that the compelling governmental interests served by the regulations outweighed the employees' privacy concerns. It further stated that imposing a warrant requirement would do little to further the very purpose of a warrant because the circumstances permitting the testing and the limits of the intrusion were "narrowly and specifically" defined. According to the Court a warrant requirement would significantly hinder the purpose of the testing due to the perishable nature of the evidence. *Skinner,* 489 U.S. at 622–24, 109 S.Ct. at 1415–17. Moreover, the Court stated that an individualized suspicion requirement was also not necessary to render the search at issue reasonable. The testing posed only a limited threat to the employees' justifiable privacy expectation, especially because they participate in an industry subject to pervasive safety regulation.

We have once before been asked to consider the impact of *Skinner* on the constitutionality of the implied consent law at issue in this case. In *State v. Bento,* 600 A.2d 1094 (Me.1991), we held that the statute may not be construed to require that probable cause of intoxication be established prior to a driver's submitting to a blood test. Further, we stated that the statute required only that probable cause be established at the trial in order for the test results to be admissible. We declined to address the impact of *Skinner* on the case because the constitutional argument was raised for the first time on appeal and because a remand was necessary to resolve inconsistent factual findings before we could determine whether the constitutional question was squarely presented.

We noted in *Bento* that the legislature did not intend to treat an operator involved in a vehicle fatality in the same manner as an operator involved in a routine OUI stop. *Bento,* 600 A.2d at 1096. That observation bears repeating here. In the latter scenario probable cause must exist at the time a blood test is administered. In the former scenario, the statute contemplates that probable cause is implicated only when admission of the test result is sought *at the trial.* The justification for the search is linked to the gravity of the accident as well as the evanescent nature of evidence of intoxication and the deterrent effect on drunk driving of immediate investigations of fatal accidents. The State, in effect, conditions the privilege of driving on every driver's willingness to submit to a test, if, and only if, he or she is involved in a fatal or near fatal car accident. In all other OUI scenarios the State may proceed to search an individual only on the basis of probable cause. We believe *Skinner* confirms the permissibility of such a scheme.

*Skinner* gauged the reasonableness of the search by looking at the surrounding circumstances: the fact the delay in testing would frustrate the government's purpose, the heavy regulation of the railway industry, and the minor intrusion occasioned by the tests. Certainly the State faces the same problems with testing delay, and the intrusion occasioned by Maine's scheme is no more than that in *Skinner.* Finally, although our state's highways may not be as regulated as railways, they are nonetheless highly regulated.

The Court's holding in *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), provides further support for our decision. In *Sitz* the Court upheld the constitutionality of a highway sobriety checkpoint program. The Court held that a vehicle stop amounted to a seizure, but concluded that it was reasonable under the Fourth Amendment because there could be no dispute about the magnitude of, and the States' interest in, eradicating the problem of intoxicated drivers. Because the seizure was so limited in time and intrusion, the balance weighed in favor of the state. The balance also weighs in the State's favor in the case at hand. We are mindful of the fact that courts in other jurisdictions have taken a more restricted view of the impact of *Skinner* when applied to highway fatalities. *See King v. Ryan*, 153 Ill.2d 449, 180 Ill.Dec. 260, 607 N.E.2d 154 (1992); *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992). We are unable to conclude that the public's interest in preventing highway fatalities resulting from drunk drivers is less compelling than its interest in ensuring safety in rail transportation. Driving is an activity that is increasingly subject to regulation, and one involved in a fatal accident would ordinarily expect to be subjected to an investigation. Any intrusion added by section 1312 is not sufficient to constitutionally compel a requirement for a simultaneous determination of probable cause.

Defendant's argument that the blood test results were inadmissible because no independent probable cause was proved pursuant to 29 M.R.S.A. § 1312 is without merit. Our review of the court's ruling relative to the issue demonstrates competent evidence of independent probable cause.

The Defendant's remaining argument is without merits and requires no discussion.

The entry is:

Judgment affirmed.

All concurring.