A True Copy
Attest: Jolly U. Guugl Clerk of Courts
DC

STATE OF MAINE

CUMBERLAND, ss.

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-04-1307



STATE OF MAINE

v.

RICHARD CORMIER

ORDER
AND
DECISION

Richard Cormier was indicted on June 10, 2004 and charged with two counts of manslaughter and separate counts of aggravated assault, aggravated operating under the influence, and reckless conduct with the use of a dangerous weapon as a result of a motor vehicle accident on May 11, 2003 in Raymond, which resulted in the death of Hazen Spearin and Blanche Spearin. Mr. Cormier filed a motion to suppress along with a detailed memorandum of law which was followed by a supplemental motion to suppress. The motions have been heard and fully briefed.

The accident involved a head on collision on Route 85 on the afternoon of Mother's Day between the Cormier vehicle and the Spearin vehicle. Mr. Cormier was taken by ambulance to a hospital in Portland where a blood sample was taken from him pursuant to 29-A M.R.S.A. §2522(1) because a death had unfortunately occurred. That statute states as follows:

> If there is probable cause to believe that death has occurred or will occur as a result of an accident, an operator of a motor vehicle involved in the motor vehicle accident shall submit to a chemical test, as defined in section 2401, subsection 2401, subsection 3, to determine blood-alcohol level or drug concentration in the same manner as for OUI.

The blood sample was sent to the Maine Department of Human Services Health and Environmental Testing Laboratory which prepared a report dated May 19, 2003

which indicated that a "Chemical Analysis of this sample showed: 0.08% ALCOHOL by WEIGHT." The test results contained a preprinted notice that, "Any remaining evidence will be destroyed six (6) months from the analysis date unless claimed by the officer or a responsible official."

Mr. Cormier was not initially charged by complaint with any crimes at all. After he was indicted, some thirteen months after the accident, his defense counsel requested access to the blood sample so that a separate test could be done to verify the accuracy of the 0.08% result. This was particularly important as there was no evidence at the scene of the accident that the defendant had been drinking.

Under Maine law, see 29-A M.R.S.A. §2411(1), a person is guilty of criminal operating under the influence if he either operates under the influence or operates a motor vehicle while having a blood-alcohol level of 0.08% or more. Since neither of the police officers who had contact with the defendant at the accident scene noticed any smell of alcohol or other evidence of alcohol consumption, the blood test was crucial to any prosecution for operating under the influence. As there was no evidence of excessive speed or any reason to impose criminal liability, other than liability based on alcohol consumption, the accuracy of a 0.08% test result was essential.

The defendant was informed, however, that a second test could not be done as the blood sample had been destroyed as part of a routine practice of disposing of old samples because of a shortage of storage space at the laboratory. As the chemist had no reason to know that this case involved deaths, as the State had not asked that the sample be set aside and saved, and as the defendant had not been charged, the sample was destroyed on January 23, 2004 more than eight months after the accident but before indictment.

Mr. Cormier in his supplemental motion to suppress has requested that the results of the blood test be suppressed since the action of the State in destroying the sample prohibited him from having a second analysis done regarding the crucial blood test.

This argument fails. There are a number of useful precedents but two decisions of the Law Court and one of the Supreme Court of the United States are most helpful. In *State v. Cyr*, 588 A.2d 753, 5 (Me. 1991) a person convicted of arson claimed, "prejudice from the State's failure to preserve exculpatory evidence." In note 4 the Law Court stated,

> "The State's failure to preserve evidence does not violate a criminal defendant's right to a fair trial unless (1) the evidence possesses an exculpatory value that was apparent before the evidence was destroyed, (2) the defendant would be unable to obtain evidence of comparable value by other reasonably available means, and (3) the State acted in bad faith in failing to preserve potentially useful evidence. *State v. Lewis*, 584 A.2d 622, 625 (Me. 1990)."

In *State v. Anderson*, 1999 ME 18 several defendants challenged the failure of the State to preserve a second breath sample for future reanalysis. The Law Court referred to *California v. Trombetta*, 467 U.S. 479 (1984) and determined that samples need not be preserved.

As stated by Justice Marshall in the *Trombetta* opinion at 481 "... the question presented is whether the Due Process Clause requires law enforcement agencies to preserve breath samples of suspected drunken drivers in order for the results of breath-analysis tests to be admissible in criminal prosecutions." Justice Marshall's opinion observed, at note 11, that California at that time automatically preserved blood samples but not breath samples. The methods of analysis that the Supreme Court and our Law Court have utilized are more important that the type of sample tested or the routine state procedures regarding preservation of samples.

In the *Trombetta* opinion the Supreme Court examined what it called "access-to evidence cases", at 485-6, and discussed the "government's duty to take affirmative steps to preserve evidence on behalf of criminal defendants", at 486. The decision stressed the requirement that "Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." See 488. The Court added that, "To meet this standard ... evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." See 489. The Court concluded that, since test results were generally reliable and since potential defects could be pointed out, no duty to preserve breath samples was required by the Due Process Clause of the Fourteenth Amendment. *Trombetta* at 489 and 491.

In this case the opportunity for a second analysis is more important given the 0.08% result and the lack of other evidence of impairment. The evidence did possess an exculpatory value, which should have been apparent before it was destroyed. The defendant would, however, have had the opportunity to present exculpatory evidence by other means, though perhaps not as conclusive as potentially demonstrating that the test result was inaccurate, including both a challenge to the test procedures and results and a vigorous presentation demonstrating that two trained officers and an ambulance attendant had failed to notice any sign, even the slightest, of alcohol consumption. Lastly, while the State should have requested that the blood not be destroyed, its careless inaction under these circumstances does not constitute acting in bad faith. The defendant's supplemental motion to suppress is denied. Should this case ever proceed to trial this Court would seriously consider allowing the defendant to comment to the

4

jury regarding the destruction of evidence, the margin of error in testing and the inability to verify what is a just at the legal limit result.

The defendant has a second challenge which is contained, among others, in his initial motion to suppress. In that motion his primary argument is that the State could not constitutionally take a blood sample from him. At the suppression hearing Detective Ackerman and Deputy Sheriff Marston both indicated that they spoke, however briefly, with the defendant at the accident scene but found no evidence of alcohol consumption. Likewise Lieutenant Shawn Hebert from Raymond Fire Department found no evidence of alcohol consumption during his time with Mr. Cormier when they were together in the back of an ambulance on the way to the hospital in Portland. There was no evidence of alcohol consumption.

In the absence of evidence a warrant could not be obtained and the regular non-fatality Maine implied consent law, 29-A M.R.S.A. §2521, could not be used since probable cause to believe that Mr. Cormier had operated a motor vehicle under the influence of intoxicants did not exist. The only basis for obtaining a sample would be consent or the statute at 29-A M.R.S.A. §2522, which requires testing when a death has occurred.

The evidence did not convince me that consent existed. The defendant was approached by a detective and a nurse while he was at the hospital. The detective did not read the normal warnings that are used in non-death cases under the implied consent law. The detective had been directed by his Captain to obtain a sample. In a firm resolute manner Detective Thorpe informed the defendant that he was there to obtain a blood sample. While Detective Thorpe acted very professionally, he did not present the defendant with any meaningful choice. The defendant's acquiescence was not a voluntary consent rather it was an act of polite resignation to the inevitability of

5

the taking of a sample. There was no written consent, or discussions of options, rather it was a polite firm directive that I am here to take a sample with a simple response of "OK."

The Maine law regarding testing in cases involving deaths serves a noble understandable purpose. If a death has taken place it makes sense to find out if any surviving operator who was involved was under the influence of alcohol or drugs. In *State v. Roche*, 681 A.2d 472 (Me. 1996) the Law Court rejected a challenge to the constitutionality of requiring a blood-alcohol test in the absence of probable cause in a case involving a death. The Law Court noted that a Supreme Court case, *Skinner v. Railway Labor Executives Association*, 489 U.S. 602 (1989) permitted blood tests in specialized circumstances without probable cause or as stated at 681 A.2d 474, "on less than individualized suspicion." In *Skinner* the Supreme Court focused on the compelling governmental interest in transportation safety, which outweighed the employees privacy concerns. The justification used by the Supreme Court and the Law Court was the "special needs" exception to probable cause.

The Law Court in *Roche* stated, at 474, "The justification for the search is linked to the gravity of the accident as well as the evanescent nature of evidence of intoxication and the deterrent effect on drunk driving of immediate investigations of fatal accidents. The State, in effect, conditions the privilege of driving on every driver's willingness to submit to a test, if, and only if, he or she is involved in a fatal or near fatal accident. In all other OUI scenarios the State may proceed to search an individual only on the basis of probable cause. We believe *Skinner* confirms the permissibility of such a scheme." Important to the Law Court was the statutory provision, which is in the current statute as well, that before the test result is admissible at trial there must be evidence,

6

independent of the test result, to establish probable cause that the operator was under the influence at the time of the accident. See 29-A M.R.S.A. §2522(3).

The *Roche* decision answers the question, under Maine law, whether a blood test can be taken in a case involving a fatality in the absence of a warrant, probable cause with exigent circumstances or consent. However, a more recent Supreme Court case invalidates Roche and determines the outcome of the motion to suppress.

In *Ferguson v. City of Charleston*, 532 U.S. 67 (2001) the Supreme Court reviewed a challenge to the practice at a Charleston, South Carolina, public hospital of testing maternity patients for drugs without their consent. The Supreme Court determined that while three of its previous cases, including *Skinner*, involving railway employees, Customs Service employees or high school athletes, fit within the narrow category of permissible suspicionless "special needs" searches the drug testing at the hospital did not. The Supreme Court stressed that "special needs" must be divorced from the state's general law enforcement interest. In *Ferguson* the police were actively involved. In our case the police were even more extensively involved. Here the primary purpose of taking the blood sample was to gather evidence following a fatal accident. A detective and nurse were dispatched to a hospital to obtain evidence.

While the Maine statute at 29-A M.R.S.A. §2522 has the proper and noble purpose of promoting public safety, evidence cannot be gathered in violation of the Constitution of the United States or the assumed to be current interpretation of the comparable provisions of the Maine Constitution. The holding in *Ferguson*, when applied to 29-A M.R.S.A. §2522 and its requirement of mandatory submission to a test without any probable cause, requires that the motion to suppress be granted. As in *Ferguson*, "The Fourth Amendment's general prohibition against nonconsensual, warrantless, and suspicionless searches applies to such a policy", *Ferguson* at 86. Justice

7

Stevens stated for the majority, in terms that are applicable to our case, "Given the primary purpose of the Charleston program, which was to use the threat of arrest and prosecution in order to face women into treatment, and given the extensive involvement of law enforcement officials at every stage of the policy, this case does not fit within the closely guarded category of 'special needs'". *Ferguson* at 84.

The other issues raised in the initial motion to suppress need not be reached.

The entries are:

Supplemental Motion to Suppress is denied.

Motion to Suppress is granted. The results of the blood-alcohol test are suppressed.

Dated:       June 3, 2005

Paul A. Fritzsche
Justice, Superior Court

8

STATE OF MAINE
  vs
RICHARD   CORMIER
155 GORE ROAD
RAYMOND ME 04071

DOB: 09/03/1954
Attorney: BRUCE CORMIER
         LAW OFFICE OF BRUCE MICHAEL CORMIER
         86 SUMMER ST
         HAVERHILL MA 01830

Attorney: GLEN PORTER
         EATON PEABODY
         80 EXCHANGE ST
         PO BOX 1210
         BANGOR ME 04402-1210
         RETAINED 08/17/2004

Filing Document: INDICTMENT
Filing Date: 06/10/2004

SUPERIOR COURT
CUMBERLAND, ss.
Docket No   PORSC-CR-2004-01307

**DOCKET RECORD**

State's Attorney: STEPHANIE ANDERSON

Major Case Type: FELONY (CLASS A,B,C)

## Charge(s)

**1   MANSLAUGHTER**                              **05/11/2004 RAYMOND**
**Seq 4248   17-A  203(1)(A)**        **Class A**

**2   MANSLAUGHTER**                              **05/11/2004 RAYMOND**
**Seq 4248   17-A  203(1)(A)**        **Class A**

**3   AGGRAVATED ASSAULT**                        **05/11/2004 RAYMOND**
**Seq 630    17-A  208(1)(B)**        **Class B**

**4   AGGRAVATED OPERATING UNDER THE INFLUENCE**  **05/11/2004 RAYMOND**
**Seq 5129  29-A  2411(1)**                **Class C**

**5   RECKLESS CONDUCT WITH A DANGEROUS WEAPON**  **05/11/2004 RAYMOND**
**Seq 636    17-A  211(1)**                **Class C**

## Docket Events:

06/11/2004 FILING DOCUMENT -  INDICTMENT FILED ON 06/10/2004

06/11/2004 TRANSFER -  BAIL AND PLEADING GRANTED ON 06/10/2004

           TRANSFER -  BAIL AND PLEADING REQUESTED ON 06/10/2004

06/25/2004 ORDER -  SPECIAL ASSIGNMENT ENTERED ON 06/17/2004
           NANCY  MILLS , SUPERIOR COURT CHIEF JUSTICE
           ASSIGNED TO JUSTICE FRITZSCHE.

07/20/2004 BAIL BOND - PR BAIL BOND FILED ON 07/15/2004

Date Bailed: 07/15/2004

## Conditions of Bail:

Refrain from possession or use of intoxicating liquor. Refrain from possession or use of any unlawful drugs.

Submit to random search and testing for alcohol, drugs upon reasonable suspicion of use or possession.

Not operate or attempt to operate any motor vehicle until licensed.

07/20/2004 Charge(s): 1,2,3,4,5
HEARING - ARRAIGNMENT HELD ON 07/14/2004
PAUL A FRITZSCHE , JUSTICE
Attorney: SARAH CHURCHILL
DA: JEFF MOSKOWITZ
Defendant Present in Court

READING WAIVED. DEFENDANT INFORMED OF CHARGES. COPY OF INDICTMENT/INFORMATION GIVEN TO DEFENDANT. 60 DAYS TO FILE MOTIONS. ARRAIGNMENT HELD IN YORK COUNTY. TAPE #826. CONFERENCE CALL TO BE HELD END OF SEPTEMBER. DISCOVERY TO BE GIVEN TO DEFENDANT'S NEXT WEEK.
                          M. PURVES

07/20/2004 Charge(s): 1,2,3,4,5
PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 07/14/2004

08/02/2004 MOTION - MOTION FOR DISCOVERY FILED BY DEFENDANT ON 07/28/2004
MARIAH PURVES , ASSISTANT CLERK-E
SPECIFIC DISCOVERY.

08/02/2004 MOTION - MOTION EXPERT WITNESS REPORT FILED BY DEFENDANT ON 07/28/2004
MARIAH PURVES , ASSISTANT CLERK-E

08/19/2004 Party(s): RICHARD CORMIER
ATTORNEY - RETAINED ENTERED ON 08/17/2004

08/20/2004 MOTION - MOTION FOR WITHDRAWAL OF CNSL FILED BY COUNSEL ON 08/19/2004

08/23/2004 MOTION - MOTION FOR WITHDRAWAL OF CNSL GRANTED ON 08/20/2004
CARL O BRADFORD , JUSTICE
COPY TO PARTIES/COUNSEL

08/26/2004 Charge(s): 1,2,3,4,5
MOTION - MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 08/26/2004
HEIDI L BAKER , ASSISTANT CLERK-E
MOTION FOR APPOINTMENT OF COUNSEL AFTER THE FACT.

08/27/2004 Charge(s): 1,2,3,4,5
MOTION - MOTION FOR APPOINTMENT OF CNSL GRANTED ON 08/27/2004
CARL O BRADFORD , JUSTICE
COPY TO PARTIES/COUNSEL

09/10/2004 Party(s): RICHARD CORMIER
ATTORNEY - RETAINED ENTERED ON 08/17/2004

Attorney: GLEN PORTER

09/10/2004 MOTION - MOTION FOR ENLARGEMENT OF TIME FILED BY DEFENDANT ON 09/10/2004

CONSENTED TO

09/10/2004 MOTION -  MOTION FOR ENLARGEMENT OF TIME GRANTED ON 09/10/2004
           ROLAND A COLE , JUSTICE
           COPY TO PARTIES/COUNSEL

10/14/2004 MOTION -  MOTION TO SUPPRESS FILED BY DEFENDANT      ON 10/13/2004
           MOTION - $0.06 MOTION TO SUPPRESS FILED BY DEFENDANT
           MARIAH  PURVES , ASSISTANT CLERK-E

02/17/2005 HEARING -  MOTION TO SUPPRESS SCHEDULED FOR 02/28/2005 @ 9:00
           JACQUELINE  RYAN , ASSOCIATE CLERK
           NOTICE  TO PARTIES/COUNSEL

02/17/2005 HEARING -  MOTION TO SUPPRESS NOTICE SENT ON 02/17/2004
           JACQUELINE  RYAN , ASSOCIATE CLERK

02/17/2005 LETTER -  FROM PARTY FILED ON 01/24/2005


02/25/2005 MOTION -  MOTION TO SUPPRESS FILED BY DEFENDANT      ON 02/25/2005
           MOTION - $0.06 MOTION TO SUPPRESS FILED BY DEFENDANT
           MARIAH  PURVES , ASSISTANT CLERK-E
           SUPPLEMENTAL MOTION TO SUPPRESS

03/07/2005 HEARING -  MOTION TO SUPPRESS CONTINUED ON 02/28/2004


03/07/2005 HEARING -  MOTION TO SUPPRESS SCHEDULED FOR 03/28/2005 @ 8:30
           JACQUELINE  RYAN , ASSOCIATE CLERK
           NOTICE  TO PARTIES/COUNSEL

03/07/2005 HEARING -  MOTION TO SUPPRESS NOTICE SENT ON 03/07/2005
           JACQUELINE  RYAN , ASSOCIATE CLERK

03/28/2005 MOTION -  MOTION FOR DISCOVERY MOOT ON 03/28/2005
           PAUL A FRITZSCHE , JUSTICE
           AS TO ALL THREE MOTIONS.

03/28/2005 HEARING -  MOTION TO SUPPRESS HELD ON 03/28/2005
           PAUL A FRITZSCHE , JUSTICE
           Attorney: GLEN PORTER
           DA:  DEBORAH CHMIELEWSKI
           Defendant Present in Court

           STATE'S WITNESSES: 1) BRIAN ACKERMAN, 2) WILLIAM RHODES, 3) PAUL THORPE,4) ERIC MARSTON 5)
           CAROL DEMARKUS, 6) STEVE PIERCE.   DEFENDANT'S WITNESSES: 1) MICHAEL BRUNO, 2) SHAWN
           HEBERT, 3) ELIZABETH CORMIER. REBUTTAL WITNESS: PAUL THORPE.  STATE'S BRIEF AND CLOSING
           ARGUMENTS TO BE FILED BY APRIL 11, 2005 AND DEFENDANT'S BRIEF AND CLOSING ARGUMENTS TO BE
           FILED BY APRIL 29, 200.  ORIGINALS TO BE FILED WITH COURT, COPIES BY PARTIES TO BE SENT TO
           JUSTICE FRITZSCHE.   PROCEEDINGS TAPED-#2486/2587

03/28/2005 MOTION -  MOTION TO SUPPRESS UNDER ADVISEMENT ON 03/28/2004


03/28/2005 MOTION -  MOTION TO SUPPRESS UNDER ADVISEMENT ON 03/28/2005


03/28/2005 MOTION -  MOTION EXPERT WITNESS REPORT MOOT ON 03/28/2005


04/12/2005 MOTION -  MOTION TO SUPPRESS FILED BY STATE ON 04/11/2005
           MARIAH  PURVES , ASSISTANT CLERK-E
           STATE'S MOTION IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS AND SUPPLEMENTAL MOTION TO
           SUPPRESS.

05/03/2005 OTHER FILING -  OTHER DOCUMENT FILED ON 05/03/2005
           MARIAH  PURVES , ASSISTANT CLERK-E

DEFENDANT'S REPLY TO THE STATE OF MAINE'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS.

06/07/2005 MOTION -  MOTION TO SUPPRESS DENIED ON 06/06/2005
                     PAUL A FRITZSCHE , JUSTICE
                     COPY TO PARTIES/COUNSEL

06/07/2005 MOTION -  MOTION TO SUPPRESS GRANTED ON 06/06/2005
                     PAUL A FRITZSCHE , JUSTICE
                     COPY TO PARTIES/COUNSEL

06/07/2005 ORDER -  COURT ORDER FILED ON 06/06/2005
                    PAUL A FRITZSCHE , JUSTICE
                    ORDER AND DECISION

                                               SUPPLEMENTAL MOTION TO SUPPRESS
           IS DENIED. MOTION TO SUPPRESS IS GRANTED. THE RESULTS OF THE BLOOD-ALCOHOL TEST ARE
           SUPPRESSED.

A TRUE COPY
ATTEST: _____
                         Clerk